OPINION OF THE COURT
Chief Judge Kaye.
At issue in these four CPLR article 78 proceedings is whether, pursuant to Retirement and Social Security Law § 803, petitioners are entitled to retroactive membership in the New York State Teachers’ Retirement System (TRS), to include periods they spent as part-time or substitute teachers in respondent school districts. We conclude that in each case, petitioner teachers demonstrated their eligibility for retroactive membership by substantial evidence. Further, we hold that only respondent Kingston Board of Education then provided a rational basis for denying retroactive membership. Thus, we reverse the order of the Appellate Division and dismiss the Clark petition, and in the remaining three cases affirm the Appellate Division orders declaring those petitioners eligible for retroactive membership in TRS.
I.
TRS is a retirement system affecting New York State’s public school districts. Membership is divided into tiers — lower tiers have better benefit levels, minimum retirement ages and *671 levels of employee contributions. Membership in a tier is dependent on the date the employee first applies to join the system. Teachers who have worked longer generally belong to lower tiers.
Full-time teachers are required to participate (Education Law § 503 [1] [b]). Part-time and substitute teachers have the option, but are not required, to join (Education Law § 503 [2]; § 520 [2] [b]). Such teachers might choose not to join TRS in order to avoid Social Security withholding or because they do not intend to make their careers in education. Until the effective date of Education Law § 520 (2) (b) in 1986, school districts were not required to inform these teachers of their right to join the system or keep records that they had so informed them. Thus, part-time and substitute teachers might never have known of their eligibility and missed an opportunity for improved tier status. Before Education Law § 520 (2) (b), school districts had an incentive not to inform part-time and substitute teachers of their option to join because doing so would avoid employer contributions to TRS and Social Security.
The remedy provided by Education Law § 520 (2) (b) was not retroactive. Those teachers who had not been previously informed of their rights, but who wanted to claim pension benefits for prior service, had to petition the Legislature for the passage of "picture bills” which granted them the right to retroactive membership (see, Budget Report on Bills, Bill Jacket, L 1993, ch 437). In 1993, the Legislature enacted Retirement and Social Security Law § 803, to provide substitute and part-time teachers with a chance to obtain retroactive membership, and thereby eliminate the need for picture bills.
Under section 803, the teacher initiates the process by filing an application with TRS seeking retroactive membership within three years of the statute’s effective date, October 24, 1993 (Retirement and Social Security Law § 803 [b] [1]). The applicant must have served "continuously” from the time membership is sought (Retirement and Social Security Law § 803 [b] [2]). Once the teacher has demonstrated these requirements, TRS provides an affidavit, to be completed by both the teacher and the school district. For eligibility, this affidavit must state that retroactive membership is appropriate because the teacher
"did not (i) expressly decline membership in a form filed with the employer; (ii) participate in a procedure explaining the option to join the system in *672 which a form, booklet or other written material is read from, explained or distributed, such form, booklet or written material can be produced and documentation or a notation to the effect that he or she so participated exists; or (iii) participate in a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision by him or her to join a public retirement system” (Retirement and Social Security Law § 803 [b] [3]).
A teacher who seeks to prove that he or she did not participate "in a procedure described in clause (ii) or (iii) hereof must do so by substantial evidence” (id.). If the employer then denies retroactive membership, it must so indicate on the affidavit, and provide a review process for the teacher "which shall afford a member an opportunity to appear in person or in writing” (id.). After such review, the school district makes its final determination, which, if unfavorable to the teacher, may be challenged in an article 78 proceeding. If the teacher is granted retroactive eligibility, the employer assumes responsibility for the added costs of such membership (Retirement and Social Security Law § 803 [e]).
II.
Against this statutory backdrop we examine the claims of the four sets of petitioners.
Scanlan v Buffalo Pub. School Sys.: Joseph Scanlan, a TRS member since September 1973, seeks retroactive membership to include his service as a part-time teacher in respondent Buffalo Public School System from April 1972 to June 1973. Scanlan completed his portion of the affidavit and Buffalo sent him a questionnaire, which he completed, notarized and returned. Buffalo then denied Scanlan’s claim, noting on the affidavit that he had failed to meet the requirements of Retirement and Social Security Law § 803 (b) (3) (ii) and (iii).
Following his request for review, Scanlan submitted a letter denying that either of the grounds cited by Buffalo applied to him. Scanlan stated that he had an absolute recollection that he did not participate in any procedure explaining the option to join TRS and that he never had any direct contact or discussion with anyone at Buffalo’s personnel department pertaining to a decision on his part to join TRS. Had he been afforded the opportunity to join, the letter continued, he would have, as he had decided that teaching should be his lifelong profession. *673 Buffalo again denied Scanlan’s request by letter stating simply that "the information provided does not meet the required burden of proof by the claimant under the Law.” Scanlan commenced this article 78 proceeding to annul the determination, Supreme Court granted the petition and ordered retroactive membership. The Appellate Division affirmed, as do we.
Leister v Board of Educ. of Brentwood: Petitioner Carol Leister seeks retroactive membership in TRS for her service as a part-time substitute teacher in respondent Board of Education of Brentwood Union Free School District from 1968 to 1977. Leister had joined TRS in 1977 when she secured full-time employment in another school district.
Leister sent an application to TRS, and received the affidavit to be completed by Brentwood. The school district refused to complete her affidavit, stating that "the District has been unable to clearly determine whether or not it has been specified to all employees their right to become a member of the retirement system.” TRS informed Brentwood in a letter that it could not refuse to complete the affidavit and remanded to the district to determine Leister’s eligibility based on the best evidence available.
Subsequently, Leister met with a representative of Brent-wood to review her eligibility for retroactive membership. Leister stated that she had twice been told by the district’s business office that, as a part-time substitute, she was ineligible for membership. Leister also indicated that she had two witnesses who could verify her statements, and proffered a letter from one of them, her sister.
Brentwood informed Leister that it was denying her application because, as before, it could not confirm whether or not it informed Leister of her eligibility in TRS, and had no information other than her personal recollection in support of her claim. It also included a letter addressed to "whom it may concern” asserting that information regarding TRS was available to employees, and that some part-time employees did join TRS. The affidavit was also returned, indicating her application was denied because she did not meet the requirement of Retirement and Social Security Law § 803 (b) (3) (iii). Supreme Court dismissed Leister’s article 78 petition, finding that she had failed to demonstrate her eligibility for retroactive membership by substantial evidence. The Appellate Division reversed, holding that the determination was arbitrary and capricious. We agree.
*674 Kaufman v Board of Educ. of Jericho: Petitioner Harriet Kaufman sought retroactive membership in TRS to include her service as a part-time teacher for respondent Board of Education of Jericho Union Free School District from 1973 to 1977. She joined TRS in 1981 when she was made a full-time teacher in another district. She submitted her claim form to TRS and her portion of the affidavit to Jericho. Jericho denied her application, indicating that she did not comply with Retirement and Social Security Law § 803 (b) (3) (iii).
Jericho then provided Kaufman with an informal hearing at its offices, at which no witnesses were sworn and no transcript made. Kaufman stated that she had never been told that part-time teaching staff had the option to join TRS and that she had never participated in any procedure that described the option to join, or one that a reasonable person would have viewed as an explanation of TRS or an opportunity to join. Jericho responded that Kaufman had filled out substitute teacher forms each year she was employed asking, among other things, whether she was currently a member of TRS.
Jericho confirmed its initial determination. Kaufman commenced an article 78 proceeding and Supreme Court granted the petition, vacating the determination and the Appellate Division affirmed. The Appellate Division refused to consider an affidavit annexed to Jericho’s answer to the article 78 petition but not addressed in the hearing or administrative determination, "inasmuch as judicial review of an administrative determination is limited to the grounds invoked by the administrative body.” (236 AD2d 538.) We affirm.
Clark v Board of Educ. of Kingston: This case presents the application of three teachers in respondent Kingston’s district: Barbara Ann Clark, Mary Littleton and Kathryn J. Miller. Each had once been a member of TRS as a full-time educator— Clark from 1959 to 1963 and Miller from 1962 to 1972 in Kingston, and Littleton from 1963 to 1971 in other districts. These petitioners then left the school system for a time, before returning to Kingston as substitute teachers — Clark and Littleton in 1972, and Miller in 1974 — but did not rejoin TRS. They sought retroactive membership to include their service as substitutes before ultimately rejoining TRS as full-time teachers — Clark in 1979, Miller in 1977 and Littleton in 1974.
Each petitioner applied to TRS, and received the affidavit. In each case, Kingston denied the application and then provided petitioners an opportunity to submit evidence in their own *675 behalf. None of the petitioners submitted any evidence beyond asserting that they were not aware of their rights to join TRS and had not otherwise been informed of them by Kingston. Kingston again denied each request, stating that each petitioner had formerly been a member of TRS as a full-time employee before working as a substitute teacher for Kingston. Moreover, it indicated that each petitioner was repeatedly asked by Kingston to complete a document (an application for substitute teaching and individual payroll requests) which required them to indicate whether they were members of TRS.
The three teachers then commenced a joint article 78 proceeding. In lieu of an answer, Kingston moved to dismiss the petition (see, CPLR 7804 [f|). Supreme Court denied Kingston’s motion and granted the petition annulling Kingston’s determination. The Appellate Division affirmed. We now reverse.
III.
The first issue we must resolve is the meaning of "substantial evidence” as used in Retirement and Social Security Law § 803 (b) (3). Petitioners in each case essentially submitted nothing more than their own statements that they were eligible for retroactive membership in TRS. Thus, we must decide whether their assertions, without more, can constitute substantial evidence. In the context of this statutory scheme, we conclude that they do.
"Substantial evidence” is both undefined in the statute and indefinite in the case law (compare, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180-181 ["(m)ore than seeming or imaginary, it is less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt”], with People ex rel. Vega v Smith, 66 NY2d 130, 139 ["(w)hile the quantum of evidence that rises to the level of 'substantial’ cannot be precisely defined, the inquiry is whether 'in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs’ ” (quoting National Labor Relations Bd. v Remington Rand, 94 F2d 862, 873 [Hand, J.], cert denied 304 US 576)]). Rather, the meaning of the term must be found in the context in which it appears.
Pointing to the legislative history, respondents urge that the Legislature intended "stringent criteria” for retroactive membership, and sufficient safeguards against fraud, abuse *676 and windfall (see, Budget Report on Bills, Bill Jacket, L 1993, ch 437 ["(i)mportantly, this bill would minimize fiscal costs by providing stringent criteria before retroactive membership would be granted”]; Governor’s Mem approving L 1993, ch 437, 1993 McKinney’s Session Laws of NY, at 2896 [bill will provide "appropriate safeguards against abuses and windfalls”]). Thus, they argue, substantial evidence cannot mean that the teachers need only aver that they are eligible for benefits.
Petitioners, on the other hand, also pointing to the legislative history, contend that the statute was designed to remedy the past injustice of school districts failing to inform their part-time employees of their right to join TRS (see, id. [statute provides "an appropriate remedy to the many individuals who were eligible to join a public retirement system but did not because they were unaware of their rights or applied and the application was lost and delayed, resulting in the loss of service credit or favorable tier status”]; see also, Governor’s Program Bill, Bill Jacket, L 1993, ch 437 ["(t)his legislation would permit the correction of the improper loss of pension benefits from public employees when issues of intersystem transfers, crediting of past service and tier shifting is involved”]). Remedial statutes, of course, should be construed broadly so as to effectuate their purpose (see, e.g., Post v 120 E. End Ave. Corp., 62 NY2d 19, 24).
While both sides offer cogent arguments based on the legislative history, we conclude that petitioners’ position better comports with the statute’s over-all purpose and the policy behind its enactment.
The statute requires petitioners to prove two negatives — the requirements of Retirement and Social Security Law § 803 (b) (3) (ii) and (iii). To demonstrate the nonexistence of these opportunities to know of eligibility for enrollment in TRS, petitioners must address events that, at best, occurred in 1986 just before Education Law § 520 (2) (b) became effective, and more probably, as in the cases now before us, many years earlier. The passage of years makes it unlikely that anyone else could comment on a petitioner’s opportunity to join TRS.
Moreover, petitioners raise the valid question — not satisfactorily answered by the school districts: how does one prove a negative by documentary evidence? Even if such evidence could exist in theory, the lack of a requirement before the passage of Education Law § 520 (2) (b) that the school districts maintain such evidence, and the possibility that any existing records *677 could have been discarded over the years, make their availability to petitioners doubtful.
Were the respondents’ restrictive interpretation of "substantial evidence” adopted very few, if any, applicants would be able to obtain retroactive membership, irrespective of the merit of their claims. The Legislature could not have intended to enact a remedial statute that no one would be able to use. We decline to interpret Retirement and Social Security Law § 803 in a manner that vitiates its remedial purpose and leads to "unreasonable and potentially unjust consequences” (Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114, 124).
Finally, while it is true that there are significant fiscal implications to petitioners’ less exacting interpretation of "substantial evidence,” the inquiry under Retirement and Social Security Law § 803 does not end with petitioner’s assertion. Should a school district determine that petitioner is not eligible for membership, it must "establish a review process which shall afford a member an opportunity to appear in person or in writing” (Retirement and Social Security Law § 803 [b] [3]). The nature of this review process is left to the discretion of the school district — there is no requirement that a hearing must be provided or any specific type of evidence examined.[1] Nothing prevents school districts, which more likely than teachers have relevant records, from putting petitioners under oath and testing the credibility of their assertions. School districts could then provide reasons why a particular teacher does not meet the requirements of Retirement and Social Security Law § 803 (b) (3) and, so long as the proffered bases are not arbitrary and capricious, the petitioner will be denied retroactive membership. This review process adequately provides the "stringent criteria” and "safeguards against abuses and windfalls” that were of concern to the Legislature.
Thus, we conclude that "substantial evidence,” as those words are used in Retirement and Social Security Law § 803, includes a burden of going forward. Petitioners must provide some evidence of their entitlement to retroactive eligibility— *678 met here in all four cases by petitioners’ assertions that they were never informed of their right to join TRS.
IV.
We next consider respondents’ denials of retroactive membership against an arbitrary and capricious standard — in other words, was there a rational basis for the administrative orders? We conclude that in Scanlan, Leister and Kaufman denials were arbitrary and capricious, but in Clark, they were rational.
Scanlan: In denying Scanlan’s application, Buffalo stated merely that, "[i]t is the determination of the reviewing representatives of the Buffalo Board of Education, the information provided does not meet the required burden of proof by the claimant under the Law. Therefore your claim is being denied.” Having concluded that Scanlan demonstrated his entitlement by substantial evidence, we hold that the denial was arbitrary and capricious.
Buffalo asks us to find a rational basis in an affidavit and exhibits, annexed to its answer in the article 78 proceeding. It has, however, long been the rule that judicial review of an administrative determination is limited to the grounds presented by the agency at the time of its determination (see, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758-759; Matter of Aronsky v Board of Educ., 75 NY2d 997, 1000-1001). The only ground offered by Buffalo in its denial letter was that the information Scanlan provided did not meet his required proof under the law. Thus, we cannot consider these additional grounds in evaluating the rationality of the administrative determination because respondent did not rely on them at the time it denied retroactive membership to Scanlan. To hold otherwise would be to unfairly disadvantage teachers, which is especially inappropriate given the control school districts already have in establishing the review process required by the statute.
Leister: In its May 5, 1995 letter denying petitioner Leister’s application, Brentwood wrote, "[a]t your hearing, aside from personal recollection, no information supporting your claim * * * was presented.” As with Scanlan, using petitioner’s failure to come forward with information other than his or her own recollection as a ground for denying membership in TRS is arbitrary and capricious.
Additionally, Brentwood attached a letter, dated the same day and addressed "to whom it may concern,” stating that in *679 formation regarding TRS membership was available to substitute teachers from a variety of sources. Further, the letter stated in conclusory fashion that other part-time and substitute teachers joined TRS. These vague assertions do not provide a rational basis for denial. The letter does not describe the time frame in which this information was available, nor does it state that Leister herself could have taken or did take advantage of the information. Stating that other teachers joined the system, without explaining the source of their knowledge, their similarity to Leister or time they joined is also insufficient to create a rational basis for denial (Matter of Gregory v Bemus Point Cent. School Dist., 237 AD2d 887).
Kaufman: In denying Kaufman’s claim, Jericho relied on employment forms she filled out each year as a substitute teacher which contained the question "Are you at present a member of the New York State Teachers’ Retirement System? Yes or No.” Each form also asked the substitute teacher whether, if they were a member, they participated in Social Security; whether their retirement contribution was reduced by Social Security, and whether they waived the 5% take home provision. According to Jericho these forms satisfy Retirement and Social Security Law § 803 (b) (3) (ii). Although the issue is close, we disagree.
Significantly, nothing on these forms explains TRS or invites the teacher to join. The documents do not even reference other materials that the substitute teacher could consult regarding TRS. Rather than providing information to the teacher, they seek answers from the teacher to payroll-related questions. We conclude that these documents were not sufficient to put Kaufman, a new teacher who had no prior experience with TRS, on notice of an opportunity to join (see also, Matter of Gregory v Bemus Point Cent. School Dist., 237 AD2d 887, supra; Matter of Fariel v Board of Educ., Sup Ct, Nassau County, May 17, 1995, Schmidt, J., index No. 2419/95, affd 230 AD2d 854 [vague notation on employment forms asking whether teacher was a TRS member not probative of whether teacher was on notice of right to join]). Thus, Jericho was un *680 able to provide a rational basis for denying Kaufman retroactive eligibility.[2]
Clark-. In denying retroactive membership to petitioners, Kingston offered two reasons why they had participated in "a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision by him or her to join a public retirement system” (Retirement and Social Security Law § 803 [b] [3] [iii]). First, the teachers’ prior enrollment in TRS while they were employed in full-time positions should have put them on notice of their rights as part-time substitutes. Second, the teachers knew or should have known because their yearly substitute teacher recall forms — similar to those discussed in Kaufman — asked if they were members of TRS, and if so, what their retirement number and rate were.
When taken together with the experience each of these teachers had in their prior service in a full-time capacity, petitioners’ standing becomes materially different from the new applicant in Kaufman. We hold that given their past tenure as full-time teachers and members of TRS, asking whether Clark, Littleton and Miller were currently members of the system is a procedure that a reasonable person would view as a request to join the system. They already had knowledge of the workings and advantages of membership that the applicant in Kaufman lacked. It was thus not irrational for Kingston to conclude that these teachers who had once belonged to TRS would understand their former employers’ inquiries about membership in the system to suggest that they had certain rights. Thus, Kingston provided a rational basis for denying these three teachers retroactive membership.
Accordingly, in Scanlan, Leister and Kaufman, the orders of the Appellate Division should be affirmed, with costs; in Clark, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Judges Titone, Bellacosa, Smith, Levine and Ciparick concur; Judge Wesley taking no part.
*681 In Matter of Scanlan v Buffalo Pub. School Sys., Matter of Leister v Board of Educ., and Matter of Kaufman v Board of Educ.: Order affirmed, with costs.
In Matter of Clark v Board of Educ.: Order reversed, with costs, and petition dismissed.

. Indeed, as revealed by the decisions of the trial courts in this State, there is no uniform review process (compare, Matter of White v Freyman, 171 Misc 2d 767 [full evidentiary hearing], with Lovett v Manhasset Pub. Schools, Sup Ct, Suffolk County, Sept. 11, 1996, Werner, J., index No. 391/96 [informal hearing without transcript]; Narog v Board of Educ., Sup Ct, Westchester County, Apr. 2,1997, Bellantoni, J., index No. 15894/96 [allowing submissions by petitioner, but no hearing]).

. To the extent that Jericho argues that affidavits annexed to its answer in the article 78 proceeding provide additional grounds for denying Kaufman’s membership — that six other similarly situated substitute teachers joined TRS in 1974 and that 25 substitute teachers were members of TRS at the time Kaufman was a substitute — we reject them for the same reasons we declined to evaluate similar belated materials in Scanlan (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758-759, supra; see also, Matter of Fariel v Board of Educ., 230 AD2d 854, supra).