Matter of Bryant v Board of Educ. of Chenango Forks Cent. School Dist. (2004 NY Slip Op 24175)

Matter of Bryant v Board of Educ. of Chenango Forks Cent. School Dist.

2004 NY Slip Op 24175 [4 Misc 3d 423]

May 18, 2004

Supreme Court, Broome County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 1, 2004

[*1]
In the Matter of Theodora Q. Bryant et al., Petitioners,
v
Board of Education of Chenango Forks Central School District, Respondent.
Supreme Court, Broome County, May 18, 2004

APPEARANCES OF COUNSEL

James R. Sandner, Latham, for petitioners. Coughlin & Gerhart, LLP, Binghamton (Todd D. Kilpatrick of counsel), for respondent.

{**4 Misc 3d at 424} OPINION OF THE COURT

Phillip R. Rumsey, J.
Petitioners are retired teachers, formerly employed by respondent Chenango Forks Central School District. Until July 2003, in addition to paying a portion of the cost of health insurance coverage for its retirees, respondent also reimbursed them for the cost of Medicare Part B premiums (which are usually deducted from the monthly payment of Social Security benefits received by eligible individuals, if "Part B" coverage is elected; for 2003, the premium was $58.70 per month). In late June 2003, however, petitioners were notified that beginning the following month, due to fiscal constraints, respondent would no longer provide reimbursement of the cost of Medicare premiums.
Petitioners challenge the legality of that action, contending that it violates a statutory moratorium, effective through May 14, 2004, against reducing the health insurance benefits (or the contributions made to obtain such benefits) of school district retirees, in the absence of a similar decrease in benefits for active employees (see, L 2003, ch 48).[FN1] 

Respondent disagrees, arguing that Medicare premium reimbursement is not a "health insurance benefit" within the meaning of the statute; that because petitioners have no contractual right to such reimbursement, it may be withdrawn at any time; and that because no active employees are receiving the same kind of payment, the district cannot {**4 Misc 3d at 425}make a "corresponding diminution" of benefits conferred upon that group, and may therefore withhold this "voluntary" payment from retirees without running afoul of the statutory moratorium.
Respondent's first two arguments require little discussion. The district's payment of premiums for Medicare, the "federal health insurance program" for elderly and disabled individuals (Medicare: The Official U.S. Government Site for People with Medicare, Glossary <www.medicare.gov/Glossary/search.asp?SelectAlphabet=M> [last updated Mar. 16, 2004]; 42 USC § 1395j [referring to Part B as a "supplementary medical insurance program"]), clearly constitutes a "contribution[ ] such . . . district makes for . . . health insurance coverage" (L 2003, ch 48, § 1) on behalf of retirees, within the meaning of the statutory moratorium. And, if retirees had a contractual right to the benefits in question, there would be no need for a statutory restraint upon their diminution, as the contract itself would provide similar protection. It is just this kind of [*2]benefitone paid "voluntarily," and therefore subject to unilateral termination or decrease by the districtthat the statute must have been intended to protect.
Turning to the effect of the moratorium itself, it precludes any diminution of retirees' health insurance benefits (or the contributions made toward the procurement of such benefits), "unless a corresponding diminution of benefits or contributions is effected . . . from the corresponding group of active employees" (L 2003, ch 48, § 1). Respondent does not contend that any such "corresponding diminution" in active employee benefits was actually effected, but only that no such diminution can be made, because no active employees are receiving the same benefit (reimbursement of Medicare premiums) that was withdrawn from the retirees.
The statutory moratorium does not, however, require that the exact same benefit be taken from both groups (retirees and active employees), but only that there be a "corresponding diminution of benefits or contributions . . . from the present level . . . from the corresponding group of active employees" (id.). Bearing in mind that the statute should be construed broadly to effectuate its remedial purpose (see, e.g., Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 676 [1997]; Matter of New York Pub. Interest Research Group Straphangers Campaign v Reuter, 293 AD2d 160, 166 [2002]), it is most reasonably interpreted as requiring a similar, or proportional, decrease in {**4 Misc 3d at 426}some type of health insurance benefit or contribution provided to active employees, rather than a decrease in the exact same benefit that is being taken from retirees,[FN2] 

as a prerequisite to reducing retiree benefits.
It is apparent, from the basic premise and overall effect of the law, that the Legislature intended to protect and preserve the health insurance benefits available to school district retirees, in light of tightening budgetary constraints that may make curtailing such benefits seem an attractive and expedient way to cut costs. This remedial, protective purpose would be undercut by the adoption of the narrow construction urged by respondent, which would leave some retiree health benefitsnamely, those that are not provided to active employees in an identical formoutside the reach of the statute, and therefore open to precisely the kind of unilateral diminution or termination that it is intended to preclude. Whether a particular benefit could be eliminated (without the protection provided by the statutory requirement of a corresponding change to active employee benefits) would essentially depend on whether the exact same kind of benefit or payment was provided to or made for active employees. This cannot have been what the Legislature intended.
Moreover, this is not a situation where the benefit in question (payment of a premium paid for coverage by a governmental health insurance plan) is of an entirely different type from anything available to the "corresponding group" of active employees (i.e., active teachers), such that it might truly be impossible to effect a "corresponding diminution" of benefits from that group. There is no substantial difference between the payment of all or some portion of a premium charged by a private insurer, and the payment of the same kind of premium collected for participation in a government insurance plan, such as Medicare. A similar decrease in the [*3]amount paid toward the cost of health insurance premiums for active teachers would therefore constitute a "corresponding diminution," as contemplated by the statute, and in the absence of such a decrease, the premium subsidy provided to petitioners, and other retirees, cannot be diminished.{**4 Misc 3d at 427}
Accordingly, the petition must be, and hereby is, granted; the challenged action of respondent (curtailment of its reimbursement of the cost of Medicare Part B premiums to retirees paying such premiums, commencing July 1, 2003) is annulled; and respondent is directed to pay petitioners (and others similarly situated) the amounts of such premiums that would have been so reimbursed, in the absence of the challenged determination.

Footnotes

Footnote 1: The relevant portion of the statute, as amended in 2003, reads as follows: "From on and after June 30, 1994 until May 15, 2004, a school district, board of cooperative educational services, vocational education and extension board or a school district as enumerated in section 1 of chapter 566 of the laws of 1967, as amended, shall be prohibited from diminishing the health insurance benefits provided to retirees and their dependents or the contributions such board or district makes for such health insurance coverage below the level of such benefits or contributions made on behalf of such retirees and their dependents by such district or board unless a corresponding diminution of benefits or contributions is effected from the present level during this period by such district or board from the corresponding group of active employees for such retirees." (L 2003, ch 48, § 1.)

Footnote 2: Moreover, the fact that the word "corresponding" was placed immediately before "diminution," rather than before "benefits or contributions," provides a further indication that it is the nature and extent of the diminution that must correspond (i.e., be similar), not the specific type of benefit that is being diminished.