■ In the Matter of ROBERT THOMAS WOODS, Appellant, v NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, Respondent. [899 NYS2d 34]—

Judgment, Supreme Court, New York County (Michael D. Stallman, J.), entered May 14, 2009, denying the petition for a declaration that respondent acted arbitrarily and capriciously in determining that petitioner was not qualified to be placed on a "special eligible list" pursuant to Military Law § 243 (7) and (7-b), and to annul the determination and direct respondent to place petitioner on such a list, and dismissing the proceeding brought pursuant to CPLR article 78, affirmed, without costs.

Military Law § 243 (7) "preserv[es] the rights of potential employees on eligible lists while they are in military service" (*Matter of DeFrancis v D'Ambrose*, 57 AD2d 804, 805 [1977], *affd* 44 NY2d 889 [1978]); it does not extend the time to satisfy the minimum requirements for eligibility. While we acknowledge petitioner's service to his country, in denying him eligibility for a position with the New York City Fire Department, respondent did no more than abide by the rules governing appointment to civil service, without resort to "extraordinary efforts," as perceived by the dissent.

Petitioner took and passed an open competitive civil service exam, exam No. 2043, to become a New York City firefighter. To be placed on a special eligible list, Military Law § 243 (7) requires that a person in military service be "reached for certification," which means that the candidate must be among those "eligibles from which selection for appointment may be made" (Rules and Regs of Dept of Civ Serv [4 NYCRR] § 4.1 [a]). The notice of examination for exam No. 2043 clearly provides that "By the date of appointment, you must have . . . 30 semester credits from an accredited college or university, or . . . two years of honorable full-time U.S. military service." Nowhere in

the notice does it state that "an applicant must only have two years' military service at the time he is available for *appointment*" as urged by the dissent.

As of January 18, 2008, when petitioner was reached for certification, and January 21, 2008, when final appointments were made from the certified list of eligible candidates generated by exam No. 2043, petitioner had completed neither of the alternative minimum requirements of the position. In January 2008, petitioner had approximately 20 months of the required 24 months of military service and no college credits. The list of names certified for appointment from exam No. 2043 (which did not include petitioner) expired on May 5, 2008. Subsequent appointments came from the eligible list generated by exam No. 6019, which was certified in June 2008.

In January 2008, petitioner could not have been certified, not because he was in military service, but because he had failed at that time to meet the minimum eligibility requirements. Thus, he was not qualified for placement on a special eligible list from which selection for the position of firefighter could be made, and respondent's determination was not arbitrary and capricious. Further, we reject the dissent's unfair characterization of respondent's action as "go[ing] to extraordinary lengths to prevent" petitioner, who served in the military, from obtaining a position with the Fire Department, which is utterly unsupported by the record.

We have considered petitioner's remaining contentions and find them unavailing. Concur—Tom, J.P., Renwick and Freedman, JJ.

Saxe and Nardelli, JJ., dissent in a memorandum by Nardelli, J., as follows: I respectfully dissent, because I believe that the interpretation of Military Law § 243 (7) and (7-b) presently espoused by respondent New York City Department of Citywide Administrative Services (DCAS) is arbitrary and without support in the statute. Furthermore, this interpretation conflicts with its own prior interpretation of the subdivisions provided in a letter sent to petitioner on September 23, 2008. Indeed, respondent has undertaken extraordinary efforts to deny a military combat veteran a position with the Fire Department, when even the Fire Department wants to employ him.

At the outset, I cannot help but to take note of the irony presented in respondent's position. It has gone to extraordinary lengths to prevent petitioner, an Iraq war veteran, and member of a firefighting family, from becoming a firefighter, in the very city where not 10 years ago hundreds of firefighters perished as the result of a despicable attack on American soil. Petitioner

has served his country honorably in its military service, and now seeks to continue his public service by joining the service which produced so many heroes on that infamous day.

On or about December 14, 2002, petitioner took an open competitive civil service exam, exam No. 2043, to become a firefighter with the City's Fire Department. The notice of examination for the test, prepared by DCAS, is a comprehensive four-page document which outlines, inter alia, the nature of a firefighter's job, and the various requirements that have to be met in order to qualify successfully for the position. As relevant to this appeal, the following language is contained in the notice of examination:

"Education and Experience Requirements: By the *date of appointment*, you must have . . .

"(2) a four year high school diploma or its educational equivalent and *have completed two years of honorable full-time U.S. military service*" (emphasis added).

It is undisputed that petitioner has met the educational requirement. It is also undisputed that before the list expired, he met the military service requirement.

Petitioner passed the examination and was placed on the list, which was established on May 5, 2004, and which expired on May 5, 2008. His ranking was 4694. On April 28, 2006, while the list was still active, petitioner enlisted in the United States Army, and subsequently served in Iraq. He was honorably discharged from the military on September 5, 2008, approximately 28 months after his enlistment.

On or about April 16, 2007, the Fire Department issued petitioner a notice that it intended to appoint him, but that he needed to submit to medical and psychological testing and have a background investigation. Since petitioner was in Iraq, his mother contacted the Fire Department, which informed her that he could complete those requirements following his discharge, as is authorized by Military Law § 243 (7-b).

On January 18, 2008, petitioner's list number was reached for possible certification. He was at that point still in the military, and thus entitled to be placed on a special eligible list, pursuant to Military Law § 243 (7), until after he was discharged. At that time petitioner had served 20 months in the Army, a significant portion of it in combat in Iraq. After January 21, 2008, no further appointments were made from the list generated from examination No. 2043. Subsequent appointments came from the eligible list generated by examination No. 6019, which was certified in June 2008. Petitioner, however, was

in Iraq serving his country when examination No. 6019 was given.

Within 90 days of his July 28, 2008 release from military duty, petitioner contacted the Fire Department to arrange to take the remaining tests (which he passed), and to formally request placement on a special eligible list, as permitted by statute. DCAS reactivated his examination list number on August 8, 2008.

By letter dated September 23, 2008, however, DCAS advised petitioner that the provisions of section 243 of the Military Law as to his being placed on a special eligibility list were inapplicable for the following reasons: "A review indicates that the notice of examination for this subject list requires that the candidate must have completed 30 college credits or two years of honorable full-time U.S. military service. Since you did not have any college credits, and based upon your DD-214, *completed the alternative two years of military service after termination of this list on May 5, 2008*, the provisions of Section 243 do not apply to you" (emphasis added).

The letter from DCAS was clearly erroneous. Petitioner had, in fact, completed his two years of military service on April 28, 2008, before the list expired. Furthermore, by the time he was discharged from the military, and before he could be actually "appointed" to the Fire Department, he had, as noted above, completed approximately 28 months of military service.

Petitioner challenged this determination in a letter dated September 28, 2008. He pointed out the error in respondent's reasoning. Equally importantly, he referred to the notice of examination, and its requirement that two years of military service must be achieved by the "DATE OF APPOINTMENT."

The following poignant excerpt was also contained in the letter: "This was my dream to be a NYC Firefighter and to follow in my father and brothers footsteps to become a part of the brotherhood of the FDNY, a life long dream denied. You see part of the reason I joined the army was a ways to my means. I knew I was not cut out for school so I needed 2 years of military service. I served our country proudly and for great reasons, you see my father was a firefighter during 9/11, and our family remembers well the waiting and wondering of if and when we would hear from my father. I decided this was part of the reason we were fighting this war. *Unfortunately while I was in Iraq the next test was given so now I will have to wait 4 more years to take the test again*" (emphasis added).

DCAS, faced with the recognition that its rationale for opposing appointment could not withstand scrutiny, and displaying a

tenacity worthy of the infamous character from Les Misérables, Inspector Javert, replied with a letter dated December 11, 2008 invoking new grounds for denying the application: "On January 21, 2008, the date upon which your list number could have been considered for appointment, you would have needed, on that day, either 30 college credits or two years of military service as specified in the Notice of Examination announcing Firefighter Exam No. 2043. However, according to the records you submit-·ted, you did not meet either qualifying option on January 21, 2008. The records indicate that, in January 2008, you had only about 20 months of the required 24 months, and no college credits. Consequently, being on Ordered Military Duty on January 21st did not prevent you from being considered for a possible appointment that day; what prevented you from being ·considered for appointment that day was the fact that you did not fully meet either of the qualifying options."

This explanation, which obviously was not given in the first letter, finds no basis in the statute, and, as well, ignores the language in the notice of examination that any applicant must have two years of military service by the "date of appointment." The notice of examination does not state that the two years of military service must be completed by the time the applicant's number is reached on the list. It recites only that the applicant must have two years of military service by the time of appointment.

In opposing the petition, DCAS takes the position that because it is the agency charged with administration of the statute, this Court must yield to its interpretation, based upon its expertise. Yet, its original grounds for declination of the application were easily proven to be erroneous by petitioner himself. It now relies on a new interpretation of the statute. In relevant part, Military Law § 243 (7) provides: "Any person whose name is on any eligible list shall, while in military duty, retain his rights and status on such list. If the name of any such person is reached for *certification* during his military duty, it shall be placed on a special eligible list in the order of his original standing, provided he makes request therefor following termination of his military duty and during the period of his eligibility on such list" (emphasis added).

The statute makes clear that an individual whose list number is reached while he is in the military is to be placed on a special eligible list, and is to remain there "for a period of two years after the termination of such military duty." Nothing in the statute requires that the applicant have two years of military service as of the date his or her name is eligible for certification in

order to be placed on the special eligible list. It is thus consistent with the notice of examination, which requires that the applicant have two years of military service as of the date of appointment, i.e., the date he actually is appointed to the Fire Department. Clearly, the date of certification is different from the date of appointment.

In *Matter of Scanlan v Buffalo Pub. School Sys.* (90 NY2d 662 [1997]), the Court of Appeals wrestled with the issue of whether four teachers could obtain retroactive membership in the New York State Teachers' Retirement System (TRS), based upon periods they spent as part-time or substitute teachers in the school districts. The Court's discussion of the issues surrounding one of the teachers, Harriet Kaufman, is of relevance here.

Kaufman had been a part-time teacher from 1973 through 1977 in Jericho Union Free School District, and became a full-time teacher in 1981 when she became employed by another school district. When she sought to obtain credit for her years as a part-time teacher, under the ameliorative provisions of Retirement and Social Security Law § 803 (b), Jericho rejected her application. Kaufman stated at the administrative hearing "that she had never been told that part-time teaching staff had the option to join TRS and that she had never participated in any procedure that described the option to join" (90 NY2d at 674). The Court of Appeals found that the school district's refusal to give her retroactive credit was arbitrary. It found that nothing in the forms that were provided to Kaufman at the time she became a part-time teacher gave her notice of the opportunity to join. The court specifically stated, "We conclude that these documents were not sufficient to put Kaufman, a new teacher who had no prior experience with TRS, on notice of an opportunity to join" (*id.* at 679).

In this case, the only form provided to petitioner at the time he took the test stated that he needed two years of military service at the "date of appointment"—not when his name was reached on the list. Taking the notice at face value, he joined the Army, put his life in jeopardy, and obtained his necessary military experience.

There is no justification for treating petitioner, a high school graduate, differently from the college graduate in *Scanlan*, with regard to instructions one received and the other did not receive. Indeed, petitioner's case is more compelling, since he was given erroneous information, at least as can be discerned from the position that DCAS now takes. Kaufman was not given any misleading information.

The majority's reliance on 4 *NYCRR* 4.1 *(a) is perplexing.*

Throughout respondent's efforts to deny petitioner appointment to the Fire Department, including the December 11, 2008 letter, and the briefs submitted on this appeal, it has never invoked the section. In any event, as discussed above, nothing in the section undermines the fundamental concept at issue here—that the announcement for the position (which was prepared by respondent) stated only that an applicant must only have two years' military service at the time he is available for *appointment*, and that the language of Military Law § 243 (7) does not provide otherwise.

The majority "acknowledge[s]" petitioner's military service, but finds his position unavailing because of a rule interpretation that is not supported by the statute. To paraphrase Justice Alito in his concurring opinion in *Ricci v DeStefano* (557 US —, —, 129 S Ct 2658, 2689 [2009]), petitioner does not demand our acknowledgment of his military record. His service is self-evident. What he has a right to demand, however, is that he not be deprived of an appointment by an arbitrary determination from an agency which has confused even itself in coming up with a reason to reject his application.

In sum, since the notice of examination advised all applicants only that they needed two years of military service by the date of appointment, since a fair reading of the statute finds that nothing contained in it contradicts the language of the notice, and since petitioner had well over two years of military service at the time he was finally eligible for appointment, i.e., at the time he completed his military obligations in the service of his country, the position taken by DCAS is arbitrary and irrational.

Such mean-spiritedness to a military veteran in the City of New York, a port where millions of soldiers have debarked as they went to place themselves in harm's way, and where the Statue of Liberty stands in the harbor, is an affront to any notion of decency and compassion that is at the bedrock of our country's ideals. **[Prior Case History: 24 Misc 3d 849.]**