[908 NYS2d 541]

In the Matter of Iris Ayala, Petitioner, v Elizabeth R. Berlin, as Executive Deputy Commissioner of the New York State Office of Temporary and Disability Assistance, et al., Respondents.

Supreme Court, New York County, September 28, 2010

APPEARANCES OF COUNSEL

*Urban Justice Center*, New York City (*Tara S. Crean* and *Megan Stuart* of counsel), for petitioner. *Andrew M. Cuomo, Attorney General*, New York City (*Domenic Turziano* of counsel), for Elizabeth R. Berlin, respondent. *Michael A. Cardozo, Corporation Counsel*, New York City (*Roy A. Esnard* and *Guruprasad Udapi* of counsel), for Robert Doar, respondent.

## OPINION OF THE COURT

MICHAEL D. STALLMAN, J.

In this CPLR article 78 proceeding, petitioner Iris Ayala challenges a determination dated October 9, 2009 of the Human Resources Administration that petitioner is not eligible to receive child care services.

## Background

According to the petition, petitioner Iris Ayala is a single mother of three minor children who receives public assistance. Petitioner alleges that the Human Resources Administration (HRA) had been paying her child care expenses since 2008. Petitioner asserts that she has been enrolled as a student in a licensed practical nursing program at Hostos Community College since fall 2008.

On June 18, 2009, HRA allegedly deemed petitioner unable to work and placed her on a wellness plan. HRA allegedly referred her to its Wellness, Comprehensive Assessment, Rehabilitation and Employment (WeCARE) program, which provides a variety of services and programs for individuals with health-related barriers to employment.

By a notice dated June 22, 2009, HRA informed petitioner that it was discontinuing child care benefits, effective July 7, 2009. (Stuart opposition affirmation, exhibit A.) According to the notice, the reason for the action was that petitioner was "Programmatically Ineligible," and the specific explanation was "You are not participating in a work-related activity." (*Id.*)

By a request dated July 8, 2009, petitioner requested a fair hearing with the Office of Temporary Disability and Assistance (OTDA). (*Id.*) A fair hearing was allegedly held on August 6, 2009. (*Id.*) By a decision after fair hearing dated August 31,

2009, OTDA reversed HRA's determination of June 22, 2009 to terminate petitioner's child care benefits. The decision states, in pertinent part:

"The record establishes that Appellant [petitioner] has been in receipt of a grant of Public Assistance. The Appellant testified that she has [been] attending Hostos Community College; that she was in receipt of assistance to meet child care needs for the period of November 2007 through June 2009; and that the Agency [HRA] has failed to provide her with any child care allowances since 2009. . . .

"Although duly notified of the time and place of the hearing the Agency failed to present any evidence to support its failure to provide Appellant with child care allowances for the period of July 2009 through the present, including its termination notice dated June 22, 2009. Nothing was presented to refute the Appellant's testimony or to show that Appellant was ineligible for child care allowances for the period in question."(*Id.*)

The decision directed HRA "to provide Appellant with appropriate assistance to meet Appellant's child care costs for July 2009 through the present, *if so eligible*." (*Id.* [emphasis supplied].)

By a fair hearing compliance statement dated October 9, 2009, HRA determined that petitioner was not eligible for child care. The fair hearing compliance statement states, in pertinent part:

"ON THE ABOVE FAIR HEARING, YOU ARE NOT ENTITLED TO CHILD CARE BENEFITS BECAUSE AS PER WECARE YOU WERE DEEMED UNABLE TO WORK EFFECTIVE JUNE 18, 2009. THEREFORE, YOU WERE NOT ENGAGED IN A WORK ACTIVITY. YOU ALSO FAILED TO VERIFY YOUR CURRENT WORK STATUS. THE AGENCY WILL NOT PAY FOR CHILD CARE UNLESS YOU ARE IN A WORK RELATED ACTIVITY." (Udapi affirmation, exhibit 1.)

On January 29, 2010, petitioner commenced this article 78 proceeding against respondents. Notwithstanding OTDA's decision that found that petitioner's child care benefits should not have been terminated, petitioner states here that "it is not contested that Ms. Ayala is ineligible for child care under 18 N.Y.C.R.R § 385.4 (a) (1) [(ii)]." (Opposition mem at 11 n 3.) Petitioner believes that she will not be entitled to child care benefits due to the regulation, which petitioner claims conflicts

with Social Services Law §§ 330 and 332-a. Petitioner believes that her nursing studies at Hostos Community College (which allegedly was not required by HRA) cannot be considered a work activity for which child care benefits (as a supportive service) are guaranteed pursuant to 18 NYCRR 385.4 (a) (1) (ii). However, petitioner believes that her studies are considered a work activity for which child care benefits are guaranteed under Social Services Law § 332-a.

On its face, the petition asserts one "cause of action" against OTDA, alleging that OTDA promulgated a regulation that is contrary to state law, and "one cause of action" against HRA, contending that HRA's failure to provide petitioner with child care benefits was arbitrary and capricious, an abuse of discretion, and in violation of law because it was based on an invalid regulation.

Respondent Berlin, as Commissioner of OTDA, cross-moves to dismiss the petition on the grounds of lack of ripeness and petitioner's failure to exhaust administrative remedies. Respondent Doar, as Commissioner of HRA, separately cross-moves to dismiss the petition only on the ground of failure to exhaust administrative remedies.[1]

## Discussion

Respondent Berlin argues that the petitioner should have sought another fair hearing to review HRA's determination of October 9, 2009 that petitioner was ineligible for child care benefits. Accordingly, respondent Berlin argues that petitioner failed to exhaust her administrative remedies. Because no fair hearing was sought, respondent Berlin argues that petitioner's claim is not ripe for judicial review. Respondent Berlin would agree not to apply any relevant administrative statute of limitations if petitioner would not request a fair hearing. (Mezoff affirmation ¶ 7.)

Respondent Doar argues that petitioner should have filed a complaint with the Commissioner of OTDA regarding the adequacy of HRA's compliance after OTDA's decision after fair hearing, pursuant to 18 NYCRR 358-6.4 (c), or should have sought an administrative hearing pursuant to 18 NYCRR 358-3.1, i.e., a fair hearing. Accordingly, respondent Doar contends that petitioner failed to exhaust her administrative remedies.

---

[1]. After a conference with counsel, the petition and cross motions were fully submitted on July 8, 2010.

Respondent Berlin's argument that the article 78 petition is not ripe for review is unpersuasive.

> "There should be no confusion about the requirement that administrative remedies must be exhausted in some cases before judicial review is available and the requirement that an action must be final before it is ripe for judicial review. The finality requirement is concerned with whether an official authorized to make the determination has arrived at a decision that inflicts injury. The requirement that administrative review must be exhausted in some cases relates to the procedure by which a party injured by a decision may seek review and obtain a remedy if the decision is found to be unlawful."
> (*Town of Orangetown v Magee*, 88 NY2d 41, 51 [1996].)

Here, HRA made a determination that inflicts injury upon petitioner, to the extent that it resulted in discontinuance of her child care benefits. No further action was needed for HRA's determination to become effective. The availability of administrative procedures before OTDA to review HRA's action raises the issue of the doctrine of exhaustion of administrative remedies, not the doctrine of ripeness.

> "It is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law. This doctrine furthers the salutory goals of relieving the courts of the burden of deciding questions entrusted to an agency, preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its 'expertise and judgment.'
>
> "The exhaustion rule, however, is not an inflexible one. It is subject to important qualifications. It need not be followed, for example, when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury." (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978].)

The court disagrees with respondents' contention that a fair hearing was available to petitioner to review HRA's determination finding petitioner ineligible for child care benefits. HRA's determination was rendered in the context of a fair hearing compliance statement, following a decision after fair hearing that was in petitioner's favor. The right to a fair hearing is codified in 18 NYCRR 358-3.1 (b), which sets forth 20 situations where an applicant or a recipient of assistance, benefits, or services has a right to a fair hearing. The situation here—the adequacy of a social services agency's compliance with a fair hearing decision—is not among the 20 situations set forth in 18 NYCRR 358-3.1 (b). Because respondent Berlin has not demonstrated that petitioner had a right to seek a fair hearing of HRA's determination, the court is not persuaded that a fair hearing was an administrative remedy that petitioner should have pursued.

By contrast, 18 NYCRR 358-6.4 (c) appears to address the situation where a social services agency fails to comply with a fair hearing decision. It states, "Upon receipt of a complaint that a social services agency has not complied with a fair hearing decision, the commissioner, through action coordinated by OAH [Office of Administrative Hearings], will secure compliance by whatever means is deemed necessary and appropriate under the circumstances of the case." (18 NYCRR 358-6.4 [c].) The court disagrees with petitioner's argument that this regulation applies only to the situation where HRA fails to act. A priori, a social services agency's failure to comply would encompass not only agency inaction, but also agency action that is contrary to a fair hearing decision.[2]

Requiring petitioner to file a complaint with the Commissioner of OTDA pursuant to 18 NYCRR 358-6.4 (c) furthers the goals of the exhaustion doctrine, i.e., to prevent "premature judicial interference with the administrators' efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation." (*Watergate II*, 46 NY2d at 57.) The gravamen of the petition is that 18 NYCRR 385.4 (a) (1) (ii) conflicts with Social Services Law §§ 330 and 332-a. There are apparent differences in the language between the regulation and the statutes. Such differences do not neces-

---

**2.** To illustrate, if a fair hearing decision determined that a social services agency should have provided a recipient of public assistance with $1,000 in benefits, then it could be said that the agency failed to comply with the fair hearing decision by providing the recipient with $700 in benefits.

sarily lead to the conclusion that the agency has enacted a regulation that is inconsistent with the statute's mandates. The Commissioner has not had the opportunity to offer an interpretation of the language of the regulation that could be consistent with the mandates of Social Services Law § 332-a. This would obviate the need for judicial intervention. Moreover, the purported conflict between the regulation and the statutes does not necessarily lead to the conclusion that petitioner will be entitled to child care benefits. OTDA's expertise would be required to determine whether petitioner's status as exempt from work requirements (due to disability) and her decision to enroll in her particular educational program, apparently independent of the social services agency, might affect her eligibility for child care benefits.

Petitioner argues that exhaustion of administrative remedies should not be required because those procedures would be futile. According to petitioner, the relief sought would be beyond the scope of the administrative procedures, and the administrative remedies would continue a never-ending cycle of review. Petitioner also argues that exhaustion is not required because the agency action was "unauthorized."

As discussed above, exhaustion of administrative remedies is not required where the challenged agency action is "wholly beyond its power." (*Watergate II*, 46 NY2d at 57.) Here, it was within HRA's power, i.e., its administrative adjudicative jurisdiction, to determine whether petitioner was eligible for child care benefits. Petitioner essentially argues that HRA's determination was contrary to law, i.e., Social Services Law § 332-a. Were the court to accept petitioner's argument, exhaustion would not be required any time a petitioner challenges an agency's determination as contrary to a statute. This would lead to the exception swallowing the rule.

Among the relief sought by petitioner is a declaration that 18 NYCRR 385.4 (a) (1) (ii) is invalid as contrary to Social Services Law § 332-a. However, the court cannot find on this record that the relief sought must be granted in order to restore child care benefits to petitioner. First, OTDA might interpret the regulation in a way that would be consistent with the statutory mandates. As discussed above, the differences in language between the regulation and the statutes do not necessarily lead to the conclusion that the regulation is inconsistent with the statutes. In the first instance, the state agency should be afforded an opportunity to interpret the regulation and determine

if it can be reconciled with the statute. Second, petitioner prevailed at the fair hearing. OTDA ruled, "Nothing was presented to refute the Appellant's testimony or to show that Appellant was ineligible for child care allowances for the period in question." (Udapi affirmation, exhibit B.)

The court is not persuaded that filing a complaint with the Commissioner of OTDA with respect to HRA's compliance with the fair hearing decision would be futile. The "endless cycle" of which petitioner complains was the result of a "circle of remands and stipulations" (opposition mem at 8). Put differently, the cycle resulted because petitioner and HRA jointly agreed to let HRA reconsider its determination.

In this court's view, the fair hearing decision itself contributed to the "endless cycle." OTDA ruled at the fair hearing that HRA's determination to terminate the appellant's child care benefits "is not correct." The only reason for HRA's determination to discontinue child care benefits was that petitioner was not participating in work activities. However, the fair hearing decision directed HRA to provide petitioner with child care benefits, "if so eligible." Because OTDA had already ruled that HRA's reasoning in its prior determination was incorrect, OTDA should have clarified that "if so eligible" should exclude any reason that OTDA previously rejected as incorrect.

*Matter of Herberg v Perales* (180 AD2d 166 [1st Dept 1992]), cited by petitioner to support her contention of futility, is distinguishable. In that case, the petitioner, who suffered from Parkinson's disease, blindness, and diabetes, suffered a debilitating stroke, requiring a hospital stay. The petitioner applied for, and was accepted by the New York City Human Resources Administration Medical Assistance Program (MAP), which provided Medicaid benefits for his in-hospital stay. Petitioner's physician advised of the need for continuous observation and care, and the hospital referred petitioner and his wife to a placement agency for nursing services. Petitioner challenged MAP's refusal to reimburse from Medicaid his out-of-pocket expenditures for nursing services, because petitioner had received the services of a nurse's aide, rather than a nurse. According to MAP, private duty services must be provided by a registered nurse or a licensed practical nurse.

The petitioner appealed to the Commissioner of the New York State Department of Social Services, which remanded the matter to the New York State Department of Health, Office of Health Systems Management (OHSM) and MAP for a redeter-

mination of petitioner's eligibility for private duty services. However, OHSM simply reiterated the same reason which MAP had previously given. At another hearing, the Commissioner rendered another decision "describing OHSM's determination as being incorrect and directing OHSM to make a new ruling if it found petitioner to be eligible for nursing services." (*Matter of Herberg*, 180 AD2d at 168.) OHSM denied eligibility again, citing the same reason which MAP had previously given.

It cannot be stressed enough that, once a Commissioner has rejected a social services agency's reason as incorrect in a fair hearing, then it should be clear in the fair hearing decision that the social services agency may no longer consider that reason to reject the eligibility of the applicant when the matter is referred to the social services agency to grant the benefits "if so eligible."[3] Although such language was used in the fair hearing decision in this case, *Matter of Herberg* is distinguishable from this case because the procedure for addressing HRA's compliance is different. Pursuant to 18 NYCRR 358-6.4 (c), petitioner files a complaint with the Commissioner of OTDA; petitioner is not going through another fair hearing which could yield a decision that contains the problematic language that appears to resolve the issue in the hearing while at the same time leaving the agency free to invoke the same ground upon reconsideration.

Assuming, for the sake of argument, that an exception to the requirement of exhaustion would apply, another issue could arise. "[J]udicial review of an administrative determination is limited to the grounds presented by the agency at the time of its determination." (*Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662, 678 [1997].) Although petitioner challenges the validity of 18 NYCRR 385.4 (a) (1) (ii), it is not readily apparent that the regulation was the basis of HRA's determination. As mentioned above, the fair hearing compliance statement states,

> "ON THE ABOVE FAIR HEARING, YOU ARE NOT ENTITLED TO CHILD CARE BENEFITS BECAUSE AS PER WECARE YOU WERE DEEMED UNABLE TO WORK EFFECTIVE JUNE 18, 2009. THEREFORE, YOU WERE NOT ENGAGED IN A WORK ACTIVITY. YOU ALSO FAILED TO VERIFY YOUR CURRENT WORK

---

**3.** As a suggestion, the fair hearing decision could include language that the matter be referred to the social services agency to grant the benefits to the applicant "if *otherwise* eligible, consistent with this fair hearing decision."

STATUS. THE AGENCY WILL NOT PAY FOR CHILD CARE UNLESS YOU ARE IN A WORK RE-LATED ACTIVITY." (Udapi affirmation, exhibit 1.)

The two grounds offered for HRA's conclusion that petitioner was not engaged in a work-related activity was: (1) that she was deemed unable to work; and (2) that she did not verify her work status. It is not clear that, in invoking these two grounds, HRA necessarily determined that petitioner's nursing studies at Hostos Community College (which allegedly was not required by HRA) cannot constitute work activities for which child care benefits are guaranteed pursuant to 18 NYCRR 358.4 (a) (1) (ii).

## Conclusion

Accordingly, it is hereby ordered that respondents' cross motions are granted; and it is further adjudged that the article 78 petition is denied for petitioner's failure to exhaust administrative remedies, and the proceeding is dismissed, without prejudice to the filing of a complaint with the Commissioner of OTDA pursuant to 18 NYCRR 358-6.4 (c).