================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 104
Kathleen Makinen et al.,
          Respondents,
        v.
City of New York, et al.,
          Appellants.


          Kathy Chang Park, for appellants.
          Lisa F. Joslin, for respondents.


FAHEY, J.:

          The United States Court of Appeals for the Second

Circuit has certified -- and we have accepted for review (29 NY3d

1019 [2017]) -- the question whether "sections 8-102 (16) (c) and

8-107 (1) (a) of the New York City Administrative Code preclude a

plaintiff from bringing a disability discrimination claim based

- 1 -

solely on a perception of untreated alcoholism?" (Makinen v City of New York, 857 F3d 491, 493 [2d Cir 2017]).  We conclude that those sections of the Administrative Code plainly preclude a disability discrimination claim based solely on a perception of untreated alcoholism, and we therefore answer the certified question in the affirmative.

I.

The facts and the procedural history of this matter are set forth in the underlying orders of the United States District Court for the Southern District of New York (53 F Supp 3d 676 [SD NY 2014]; 167 F Supp 3d 472 [SD NY 2016]) and the opinion of the Second Circuit (857 F3d 491 [2d Cir 2017]).  As relevant here, this action arises from the separate referrals of plaintiffs, each of whom was an officer with the New York City Police Department (NYPD) at all times relevant to this matter, "to the . . . internal Counseling Services Unit (CSU)" of that police force (Makinen, 167 F Supp 3d at 480; see Makinen, 857 F3d at 493). "The CSU is a certified New York State Office of Alcoholism and Substance Abuse Services outpatient treatment center, with a stated objective of assisting police officers who are experiencing difficulty with substance abuse in their rehabilitation and returning them to productive service" (Makinen, 167 F Supp 3d at 480).  Following those referrals, each plaintiff "denied that [she] had issues with alcohol abuse," yet the CSU determined that each plaintiff suffered from some form of

alcoholism (id.).  Plaintiffs did not commence a proceeding pursuant to CPLR article 78 to challenge the CSU's determinations.  The parties now agree that plaintiffs "were not actually alcoholics" (Makinen, 857 F3d at 493).

To that end, plaintiffs subsequently commenced this action alleging, among other things, that defendants "discriminated against [plaintiffs] by subjecting them to adverse employment actions based on the illegitimately perceived disability of alcohol dependence and/or abuse" (Makinen, 53 F Supp 3d at 690) in violation of the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).  In short, plaintiffs challenged "the legitimacy of [d]efendants' perception of them as disabled" (id.).

The matter proceeded to a trial in the District Court, after which, in pertinent part, the jury returned a verdict in favor of plaintiffs on their claims pursuant to the NYCHRL (see Makinen, 857 F3d at 494).  The verdict was rendered over defendants' objection to the trial court's final jury charge, which, among other things, instructed that plaintiffs could recover under the NYCHRL without establishing that they were actually or were perceived to be recovering alcoholics free from abuse.  That is, according to defendants, the trial court's final instructions contradicted the Administrative Code, which, as relevant here, applies the protections of the NYCHRL only to

those with an actual or perceived disability (see Administrative Code § 8-107 [1] [a] [3]), and provides that, "[i]n the case of alcoholism, . . . the term 'disability' . . . only appl[ies] to a person who (1) is recovering or has recovered and (2) currently is free of such abuse" (§ 8-102 [16] [c]).

Consequently, defendants moved for a new trial and for judgment as a matter of law, contending "that the NYCHRL does not extend to untreated alcoholism" (Makinen, 857 F3d at 494). The District Court, however, denied that relief (Makinen, 167 F Supp 3d 472), and defendants pursued an appeal from that District Court order to the Second Circuit.

On appeal, defendants contended, among other things, that "the NYCHRL does not protect an employee who is perceived to be an untreated alcoholic" (Makinen, 857 F3d at 494; see Administrative Code §§ 8-102 [16]; 8-107 [1] [a]). Inasmuch as no state court has addressed whether the relevant parts of that law "permit a plaintiff to bring a disability discrimination claim based solely on a perception that the plaintiff suffered from untreated alcoholism" (Makinen, 857 F3d at 496), that Court retained the appeal for determination following the disposition of this question that it certified for this Court's review:

> "Do sections 8-102 (16) (c) and 8-107 (1) (a)
> of the New York City Administrative Code
> preclude a plaintiff from bringing a
> disability discrimination claim based solely
> on a perception of untreated alcoholism?"
> (Makinen, 857 F3d at 497; see 29 NY3d 1019
> [accepting that certified question]).

II.

The parties agree that before us is a question of statutory interpretation.  To that end, "our primary consideration is to discern and give effect to the . . . intention" of the enactor of the statute or statutes at issue (Matter of Avella v City of New York, 29 NY3d 425, 434 [2017] [internal quotation marks omitted]; see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]).  Inasmuch as "[t]he text of a statute is the clearest indicator of such legislative intent," where the disputed language is "unambiguous," we are bound "to give effect to its plain meaning" (Avella, 29 NY3d at 434 [internal quotation marks omitted]).  Moreover, "[w]here[, as here,] the legislative language is clear, [we have] no occasion [to] examin[e] . . . intrinsic evidence to discover legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 120, Comment at 242).

This case turns on the issue whether defendants violated the part of the Administrative Code containing the NYCHRL, and our review of the certified question turns on the language of the relevant parts of that law.  Specifically at issue is Administrative Code § 8-107, which is entitled "[u]nlawful discriminatory practices."  Subdivision (1) (a) (3) of that section provides that, in the context of "[e]mployment," "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual

or perceived . . . disability . . . status of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" (§ 8-107 [1] [a] [3]).

Also at issue is Administrative Code § 8-102, which defines certain terms used in the NYCHRL. Subdivision 16 (a) of that section states that "[t]he term 'disability' means any physical, medical, mental or psychological impairment, or a history or record of such impairment" (§ 8-102 [16] [a]). Subdivision 16 (c) of the same section, in turn, adds that,

> "[i]n the case of alcoholism, drug addiction or other substance abuse, the term 'disability' shall only apply to a person who (1) is recovering or has recovered and (2) currently is free of such abuse, and shall not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use" (§ 8-102 [16] [c]).

Applying the aforementioned rules of statutory interpretation to this case, we conclude that the certified question should be answered in the affirmative because the Administrative Code does not consider a mistaken perception of alcoholism to be a disability covered by the NYCHRL. As the Second Circuit noted, there is no ambiguity about the plain language of the NYCHRL, which is only open to one reasonable interpretation: the disability of alcoholism "shall only apply to a person who (1) is recovering or has recovered and (2) currently is free of such abuse" (Makinen, 857 F3d at 496). Indeed, by its

plain language, the NYCHRL does not regulate employer actions motivated by concern with respect to the abuse of alcohol. Rather, the NYCHRL covers circumstances in which employers unfairly typecast alcoholics who have sought treatment and who are not presently abusing alcohol, so as to ensure that such persons are afforded a fair opportunity at recovery. Said differently, the NYCHRL provides that, with respect to alcoholism, a person is considered to be disabled (so as to trigger the protections of that law) only when he or she "is recovering or has recovered" and "currently is free of such abuse" (§ 8-102 [16] [c]; see § 8-107 [1] [a] [3]).

III.

In so concluding, we respectfully disagree with our dissenting colleague as to the import of Administrative Code § 8-130 and our decision in Albunio v City of New York (16 NY3d 472 [2011]) to this matter.

By way of background, based on its concern that the NYCHRL was being construed too narrowly by the courts, the City Council amended that law with the Local Civil Rights Restoration Act of 2005, through which Administrative Code § 8-130 came about. Section 1 of the Restoration Act states its purpose as "to clarify the scope of [NYCHRL]" (Local Law No. 85 [2005] of City of N.Y. § 1). This was deemed necessary because

> "[i]t [was] the sense of the Council that
> [NYCHRL] ha[d] been construed too narrowly to
> ensure protection of the civil rights of all
> persons covered by the law. In particular,

through passage of this local law, the Council [sought] to underscore that the provisions of [NYCHRL] are to be construed independently from similar or identical provisions of New York state or federal statutes" (id.).

Two new rules of construction can be gleaned from the Restoration Act (see Velazco v Columbus Citizens Found., 778 F3d 409, 410 [2d Cir 2015]).  First, the NYCHRL "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed" (Local Law No. 85 [2005] of City of N.Y. § 7).  Second, "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a floor below which the [NYCHRL] cannot fall,[1] rather than a ceiling above which the local law cannot rise" (id. at § 1).

The parties agree that the NYCHRL differs from its state and federal counterparts inasmuch as the NYSHRL and the ADA

---

[1]     The dissent states that the NYSHRL and the ADA provide a "floor below which the [NYCHRL] cannot fall" (dissenting op at 8).  To the extent this suggests that courts can never interpret the NYCHRL to provide less protection than the state and federal statutes, the dissent mischaracterizes the Restoration Act.  The exact instruction is that "similarly worded provisions of federal and state civil rights laws" should be viewed "as a floor below which the [NYCHRL] cannot fall" (Local Law No. 85 [2005] of City of N.Y. § 1 [emphasis added]).

both offer protections for alcoholics, whether recovering, recovered, or those presently abusing alcohol, and allow them to establish a prima face case for discrimination (see Makinen, 857 F3d at n 3; see also McEniry v Landi, 84 NY2d 554, 559 [1994], citing Executive Law § 292 [21] [a] ["Manifestly, alcohol dependency qualifies as a disability within the meaning of the (NYSHRL)"]; Regional Economic Community Action Program, Inc. v City of Middletown, 294 F3d 35, 46 [2d Cir 2002] [ADA protects alcoholics still abusing alcohol as long as work performance meets same standards of employment as entity's other employees]).[2]  To that end, as the Second Circuit observed, the plain meaning of the relevant parts of the Administrative Code "seems in tension with the New York City Council's stated intention of affording plaintiffs who sue under the NYCHRL all of the protection guaranteed by comparable provisions of State and federal law" (Makinen, 857 F3d at 494).  The question then is how the tension between the plain language of Administrative Code §§ 8-102 and 8-107 should be read when the City Council has stated that the NYSHRL and ADA should be treated as a floor when interpreting the NYCHRL broadly, and the NYSHRL and ADA both do not differentiate between recovering and recovered alcoholics and

_____

[2]     By contrast, and as noted, the NYCHRL provides that, with respect to alcoholism, a person is considered to be disabled (so as to trigger the protections of that law) only when he or she "is recovering or has recovered" and "currently is free of such abuse" (§ 8-102 [16] [c]; see § 8-107 [1] [a] [3]).

those presently abusing alcohol.

The first guidance offered by the Restoration Act, that the NYCHRL should be construed liberally to accomplish its remedial purpose, codifies what should have been clear already ("Remedial statutes, of course, should be construed broadly so as to effectuate their purpose" [Scanlan v Buffalo Pub. Sch. Sys., 90 NY2d 662, 676 (1997)]).  The consequence of this is that we must construe the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Albunio, 16 NY3d 472, 477-478 [2011]).  In line with the second interpretive guidance, "we have always strived to resolve federal and state employment discrimination claims consistently" (Zakrzewska v New School, 14 NY3d 469, 470 [2010]).[3]  We also, however, "construe unambiguous language to give effect to its plain meaning" (id.)  Even if the NYCHRL "was intended to be more protective than the state and federal counterpart" (Farrugia v North Shore Univ. Hosp., 13 Misc 3d 740, 747 [Sup Ct, New York County 2006]), and even if its "legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation" (Bumpus

---

[3]     In Zakrzewska, we concluded that our previous holding that "the human rights provisions of the [NYCHRL] mirror the provisions of the [State HRL] and should therefore be analyzed according to the same standards" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 305 n 3 [2004]) did not conflict with its holding that the NYCHRL prevented a defense available under state and federal law (Zakrzewska, 14 NY3d at 481).

v New York City Tr. Auth., 18 Misc 3d 1131[A] [Sup Ct, Kings County 2008]), the NYCHRL still must be interpreted based on its plain meaning.

It is clear that the NYCHRL only treats recovering or recovered alcoholics as having a disability under the statute, while the NYSHLR and the ADA cover alcoholics presently abusing alcohol, as well as recovering and recovered alcoholics. While the plain mandate of the Restoration Act is for it to be read broadly, and it does refer to the State and federal human rights law as floors below which the NYCHRL should not fall, this is a rare case where through its express language, the City Council has mandated narrower coverage than the NYSHRL or the ADA. The Restoration Act's requirement that the statute be construed broadly cannot apply when the NYCHRL expressly requires otherwise -- we would be rewriting the NYCHRL, not merely giving it a broad reading to effectuate its remedial anti-discrimination purpose (see Bello v Roswell Park Cancer Inst., 5 NY3d 170, 173 [2005] ["(W)e may not rewrite the statute to achieve more 'fairness' than the Legislature chose to enact"]). The City Council may always amend the language of these provisions, but until it does we are bound by its express terms.

IV.

In sum, we conclude that the Administrative Code does not consider a mistaken perception of alcoholism to be a disability covered by the NYCHRL. The only reasonable

construction of the subject NYCHRL provisions makes it unlawful for an employer to discriminate against an individual based on the individual's status, whether actual or perceived, as one recovering or recovered from alcoholism and currently free from alcohol abuse. Given this express choice by the City Council to extend the protections of the NYCHRL only to recovered or recovering alcoholics, there is no basis for us to use Administrative Code § 8-130 in search of a different reading of the NYCHRL's plain text.

Accordingly, the certified question should be answered in the affirmative.

Makinen v City of New York

No. 104


GARCIA, J.(dissenting):

Plaintiffs, two female police officers, were wrongfully diagnosed as alcoholics based on allegations made by their respective former partners from past relationships. As a result, plaintiffs' employer -- the New York City Police Department (NYPD) -- compelled them to undergo unwarranted treatment. Plaintiffs brought suit, contending, among other things, that defendants' discriminatory conduct violated City, State, and federal civil rights laws. The jury entered verdicts in favor of plaintiffs under the New York City Human Rights Law (the Human Rights Law). Defendants appealed, contending that the relevant provisions of the Human Rights Law "preclude a plaintiff from bringing a discrimination claim based solely on a perception of untreated alcoholism" (Makinen v City of New York, 857 F3d 491, 497 [2d Cir 2017]). The Second Circuit determined that certification on this issue was warranted, and we accepted the certified question.

Defendants advance a plausible reading of the Human Rights Law that would prohibit plaintiffs from recovering. Specifically, defendants contend that, according to the clear statutory language, the Human Rights Law applies only to

- 1 -

"recovering" or "recovered" alcoholics, and therefore does not extend protection to an employee who is -- or, like plaintiffs, is perceived to be -- an *untreated* alcoholic, even if that employee is not, in fact, an alcoholic at all.  The majority adopts this admittedly "narrow[]" reading of the Human Rights Law, concluding that the plain text of the statute "does not consider a mistaken perception of alcoholism to be a disability" (majority op at 6, 11).

But we are required to construe the Human Rights Law "broadly in favor of discrimination plaintiffs" wherever such a construction is "reasonably possible" (Albunio v City of New York, 16 NY3d 472, 477-478 [2011]).  Here, plaintiffs have advanced a logical interpretation of the statute that aligns with its text, that better serves its express remedial purpose, and that is consistent with its legislative history.  Accordingly, I believe plaintiffs have asserted a valid discrimination claim under the Human Rights Law, and I dissent.

I.

Plaintiffs Kathleen Makinen and Jamie Nardini served as NYPD officers for several years and, during that time, plaintiffs were falsely accused of abusing alcohol by their respective former partners.  Plaintiff Nardini's former partner -- also the father of her daughter -- accused Nardini of abusing alcohol in the midst of a tumultuous break-up and an ongoing custody battle. Nardini was referred to NYPD's Counseling Services Unit (CSU),

and she was diagnosed as suffering from alcohol abuse.  She accepted treatment only under threat of suspension.

Plaintiff Makinen was similarly referred to CSU while embroiled in a custody dispute with her former husband.  On multiple occasions, Makinen's former husband and his family members alleged, among other things, that Makinen drank excessively, drove drunk, and abused her children.  These complaints resulted in repeated referrals to CSU and, eventually, a diagnosis of alcohol dependence.  Most recently, in 2010, Makinen reluctantly agreed to attend a four-week inpatient rehabilitative treatment program in order to avoid disciplinary action.

It is undisputed that plaintiffs are not, in fact, alcoholics (majority op at 3).

Plaintiffs brought suit, alleging that defendants discriminated against them based on the erroneous belief that they were alcoholics.  Following an eight-day trial, the jury entered verdicts in favor of both plaintiffs on their claims under the Human Rights Law.  The jury awarded plaintiff Nardini $105,000 in damages, and awarded plaintiff Makinen $46,100 in damages.  Defendants moved for a new trial and for judgment as a matter of law, contending that the Human Rights Law does not cover untreated alcoholism.

The District Court for the Southern District of New York denied defendants' motion (Makinen v City of New York, 167 F

Supp 3d 472 [SD NY 2016]).  The court determined that
"[p]laintiffs did not need to meet the Section 102 (16)
definition of alcoholism," reasoning that, "if the Section 102
(16) definition applied here, the [Human Rights Law]'s protective
reach would be narrower than that of its state and federal
counterparts, which would be contrary to the express purpose of
the New York City Council" (id. at 481 [citation and quotation
marks omitted]).  Defendants appealed.

Believing that defendants' proffered construction of
the statute was "in tension with the New York City Council's
stated intention of affording plaintiffs who sue under the [Human
Rights Law] all of the protection guaranteed by comparable
provisions of State and federal law" (Makinen v City of New York,
857 F3d 491, 494 [2d Cir 2017]), the Second Circuit certified,
and we accepted, the following question:

> "Do sections 8-102 (16) (c) and 8-107 (1) (a)
> of the New York City Administrative Code
> preclude a plaintiff from bringing a
> disability discrimination claim based solely
> on a perception of untreated alcoholism?"
> (Makinen, 857 F3d at 497 [2d Cir 2017]; see
> 29 NY3d 1019 [accepting the certified
> question]).

I would answer that question in the negative.

II.

Section 8-107 (1) (a) of the Human Rights Law prohibits
discrimination based on, among other things, an "actual or
perceived . . . disability" (NYC Admin Code § 8-107 [1] [a]).
Under the statute, the term "disability" means "any physical,

medical, mental or psychological impairment, or a history or record of such impairment" (id. § 8-102 [16] [a]).  However, "[i]n the case of alcoholism, drug addiction or other substance abuse, the term 'disability' shall only apply to a person who (1) is recovering or recovered and (2) currently is free of such abuse" (id. § 8-102 [16] [c]).

## A.

When interpreting a statute, "our primary consideration is to discern and give effect to the Legislature's intention" (see majority op at 5, citing Matter of Avella v City of New York, 29 NY3d 425, 434 [2017] [internal quotation marks and citation omitted]).  In ascertaining this intention, "inquiry should be made into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010] [internal quotation marks and citation omitted]).  "[L]egislative intent is the great and controlling principle," and accordingly, "the proper judicial function is to discern and apply the will of the [enactors]" (id., citing Matter of ATM One v Landaverde, 2 NY3d 472, 477 [2004]).

Here, by expressly stating its intention, the City Council has substantially simplified our task.  By its own terms, the Human Rights Law is designed to serve "uniquely broad and remedial purposes" and, to that end, its provisions must be

"construed liberally" in favor of discrimination plaintiffs (NYC Admin Code § 8-130 [a]). The City Council has repeatedly reiterated this "liberal construction requirement" (NYC Admin Code § 8-130 [c]), believing that the Human Rights Law has been "construed too narrowly" to ensure adequate protection of civil rights (NYC Local Law 85, § 1 [2005]; see also NYC Local Law 35, § 1 [2016]). Through its legislative efforts, the City Council has "expressed a very specific vision: a Human Rights Law designed as a law enforcement tool with no tolerance for discrimination in public life" (Comm Rep of the Governmental Affairs Division of the Committee on Civil Rights [March 8, 2016]). Time and time again, the City Council has made its message clear: the Human Rights Law is designed to be "maximally protective of civil rights *in all circumstances*" (NYC Local Law 35, § 1 [2016] [emphasis added]).[4] Accordingly, we are required to construe the Human Rights Law "broadly in favor of discrimination plaintiffs" wherever such a construction is

---

[4] From this categorical and unequivocal mandate, the majority somehow extrapolates a rule that, in certain cases, the City Council's liberal construction requirement "cannot apply" (majority op at 11). The City Council could not have been clearer: the Human Rights Law must be construed liberally, to provide maximum protection, in "*all circumstances*" (NYC Local Law 35, § 1 [2016] [emphasis added]). Contrary to the majority's claim, the liberal construction requirement of Administrative Code § 8-130 applies globally to all provisions of the Human Rights Law. The majority's selective application of this requirement ignores the City Council's express directive, and implements a new threshold determination -- whether or not § 8-130 applies -- in all future cases interpreting the Human Rights Law.

"reasonably possible" (<u>Albunio v City of New York</u>, 16 NY3d 472,
477-478 [2011]).

Plaintiffs' proffered construction of the statute is,
at the very least, "reasonably possible" (<u>Albunio</u>, 16 NY3d at
478). In particular, plaintiffs contend that § 8-102 (16) (c)
does not modify the definition of "disability," but rather
operates to exempt -- in narrow, specified circumstances -- the
application of the broad statutory protections afforded by § 8-
107. In other words, § 8-102 (16) (a) broadly defines the
protected group -- individuals with a "disability" -- and
subsection (16) (c) serves only to claw back a narrow portion of
that protection "in the case of alcoholism" (NYC Admin Code § 8-
102 [16] [c]). Because plaintiffs here do not actually suffer
from alcoholism, there is no "case of alcoholism" within the
meaning of § 8-102 (16) (c).[5]

Plaintiffs' straightforward reading of these provisions
advances the statute's protective and remedial goals and gives
effect to the stated intention of the City Council: Sections 8-
107 (1) (a) and 8-102 (16) (a), which extend protection, must be
"construed liberally for the accomplishment of the [statute's]
uniquely broad and remedial purposes" (NYC Admin Code § 8-130
[a]); section 8-102 (16) (a) -- an "exemption[]" provision --
must be "construed narrowly in order to maximize deterrence of

---

[5] The majority's construction of these provisions is
evidently not the "only reasonable" one (majority op at 11).

discriminatory conduct" (id. § 8-130 [b]).  Because plaintiffs faced discrimination based on a perceived disability, and because the exemption contained in § 8-102 (16) (c) is inapplicable, I believe plaintiffs have stated a valid discrimination claim.

The majority's interpretation, by contrast, contravenes the principles of construction mandated by the statute and needlessly deprives these plaintiffs, and others, of protection against their employers' discriminatory practices.  Indeed, the State Human Rights Law and the Americans with Disabilities Act -- which generally provide the "floor below which the City's Human Rights law cannot fall" (NYC Local Law 85, § 1 [2005]; see also Loeffler v Staten Island University Hosp., 582 F3d 268, 278 [2d Cir 2009]) -- allow for these types of discrimination claims based on a mistaken perception of untreated alcoholism.  Today, for the first time, the majority interprets the Human Rights Law to provide less protection than its State and federal counterparts -- a result expressly rebuked by the City Council.

B.

The legislative history of the Human Rights Law further supports plaintiffs' proffered construction.  In 1977, the City Council first extended legislative protection against discrimination to alcoholics, but limited the protected class to "recovered" alcoholics.  Tellingly, at that time, discrimination claims based on a "perceived" disability were not yet available under the Human Rights Law.  As such, when the "recovered"

language was first written, it was applicable only in the case of *actual* alcoholism.  Indeed, inasmuch as an individual cannot "recover" from a disease that he or she has not had, the carve-out contained in section § 8-102 (16) (c) was plainly drafted to apply only to *actual* alcoholism.

When the City Council amended the Human Rights Law in 1981, it repealed that conduct-specific provision -- which covered only the limited class of "recovered" alcoholics -- and instead broadened the class of individuals protected by the statute by including "mental impairments" in the definition of "handicapped" (NYC Local Law 49, § 2 [1981]).  Thus, under the 1981 amendments, an individual who suffered from a "mental impairment" -- which included "alcoholism, substance abuse, and drug addiction" -- was protected (as "handicapped") from unlawful discriminatory practices, so long as the individual was an "otherwise qualified person[]" (id. §§ 1, 2).  To be "otherwise qualified" for statutory protection in the case of alcoholism, the "handicapped person" had to be "recovering and currently free of abuse" (id. § 2).  In this way, the 1981 amendments broadly defined the protected class of individuals (those who were "handicapped"), and subsequently withdrew that protection in specified, conduct-based instances.

In 1991, the Human Rights Law was again amended to permit discrimination claims based on "perceived" protected classification -- i.e., discrimination based on a "perceived

. . . disability" (NYC Local Law 39 [1991]).  The City Council also removed the requirement that an individual suffering from a disability must be an "otherwise qualified person," but retained the "in the case of" language -- which eliminated protection for untreated alcoholics -- and inserted it into the newly-amended § 8-102 (16) (c) (id.).  In doing so, the City Council preserved the exception for untreated alcoholics by providing that, "[i]n the case of alcoholism," the statutory protection afforded to an individual with a disability "shall only apply" where the individuals is "recovering" or "recovered" (NYC Admin Code § 8-102 [16] [c]).  There is no indication, however, that the City Council intended to revert back to the pre-1981 model that conditioned an employee's membership in the protected class of "disabled" individuals on their recovery status.  To the contrary, the 1991 amendments were intended to "strengthen" the statute and "put the city's law at the forefront of human rights laws" (Rep of Legal Division, Comm on Gen Welfare, Local Law No. 39 [1991] of City of New York, 1991 NY Legis Ann at 185).

## C.

The implications of majority's reading of the Human Rights Law extend well beyond the instant case.  Indeed, the Human Rights Law applies not only to these police officer plaintiffs, but to a broad array of potential victims in varied public and private professions.  In the case of a perception of untreated alcoholism, the majority's interpretation deprives each

and every would-be plaintiff of recourse under the Human Rights Law.

Similarly, the majority's interpretation of the Human Rights Law is not limited to those sympathetic cases in which an employer seeks to explore a suspected case of alcoholism for safety or treatment purposes. Rather, under the majority's reading, an employer may lawfully punish an employee -- by denying benefits, refusing a promotion, or terminating them -- based solely on a misguided assumption about that employee's conduct. An employer could, for instance, fire an employee with bloodshot eyes based on an incorrect assumption that the employee was abusing drugs when, in fact, the employee suffered from allergies. Such a construction is inconsistent with the purpose of the Human Rights Law and the City Council's stated goal of provided maximum protection for all civil rights plaintiffs.

Even where an employer's actions are genuinely "motivated by concern" (majority op at 7), an employer's good-faith motivation does not outweigh the importance of accuracy in these consequential determinations.[6] Plaintiffs' cases are

_____

[6] Plaintiffs' own misdiagnoses provide compelling anecdotal evidence that CSU's determinations are not always accurate. According to the trial testimony, CSU's intake assessments may be as brief as 30 minutes, and individuals generally receive a diagnosis that same day. CSU does not employ medical diagnostic testing to ensure accuracy. Nor could it; there are no physicians or psychologists on staff at CSU. Notably, according to defendants, about 98% of all patients sent to CSU receive an alcohol-related diagnosis.

illustrative of the life-altering and lasting repercussions that accompany an alcoholism diagnosis -- particularly an inaccurate one. Makinen, for instance, resorted to early retirement, believing that she "couldn't work under th[e] circumstances" and fearing that CSU would "keep listening" to her former husband and "keep sending [her] away." As a result of her experience with CSU, Makinen suffers from anxiety attacks, severe headaches, and vision loss, among other things. Plainly, no matter how well-intentioned, an improper alcoholism diagnosis carries grave implications. In any event, an employer's misguided benevolence is not relevant to the legality of its discriminatory conduct.

To be sure, an employer seeking to address a case of perceived untreated alcoholism may be motivated by good-faith concerns regarding the employee's health and safety. But the majority's reading of the statute permits both well- and ill-intentioned behavior, and does little to encourage accuracy in these crucial determinations. Nor does it ensure that "alcoholics who have sought treatment . . . are afforded a fair opportunity at recovery" (majority op at 7). Instead, the

---

Compounding this issue, CSU never reduces or removes an alcohol-related diagnosis once it is made. An officer who disputes CSU's diagnosis or otherwise refuses treatment is referred to NYPD's Medical Division. However, as a general matter, the Medical Division adopts CSU's diagnosis and "turns it into a lawful order," directing the officer to undergo treatment. If an officer fails to comply with the Medical Division's order, the officer may be subject to disciplinary action, including suspension or termination.

majority's decision shields an employer who inaccurately diagnoses a case of alcoholism, and then discriminates against an employee on the basis of that misdiagnosis.  Such an interpretation distorts the provision's clear purpose and undermine's the City Council's stated goals.

### III.

While defendants assert a plausible argument consistent with the plain language of the statute, plaintiffs have advanced a reasonable reading that is supported by the statute's legislative history and that better comports with the broad, remedial purpose of the Human Rights Law.  Accordingly, I dissent and vote to answer the certified question in the negative.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, certified question answered in the affirmative.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Wilson and Feinman concur.  Judge Garcia dissents and votes to answer the certified question in the negative, in an opinion in which Judge Stein concurs.

Decided October 17, 2017