Oak Beverages, Inc. v D.G. Yuengling & Son, Inc. (2025 NY Slip Op 04730)

Oak Beverages, Inc. v D.G. Yuengling & Son, Inc.

2025 NY Slip Op 04730

Decided on August 20, 2025

Appellate Division, Second Department

Hom

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 20, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
LINDA CHRISTOPHER
CARL J. LANDICINO
PHILLIP HOM, JJ.

2022-04039
 (Index No. 606799/21)

[*1]Oak Beverages, Inc., et al., appellants,
v
D.G. Yuengling & Son, Inc., et al., respondents.

APPEAL by the plaintiffs, in an action, inter alia, to recover damages for violation of Alcoholic Beverage Control Law § 55-c and breach of contract, from an order of the Supreme Court, dated May 9, 2022 (Sharon M.J. Gianelli, J.), and entered in Nassau County. The order granted the motion of the defendant D.G. Yuengling & Son, Inc., pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against it and for an award of costs, fees, and expenses incurred in making its motion, granted the motion of the defendant Manhattan Beer Distributors pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against it, and denied the plaintiffs' cross-motion for leave to serve a second amended complaint.

Hochheiser & Akmal PLLC, Garden City, NY (Marc Sabow, Marc Rogovin, Justin V. DiCicco, and Jareb Gleckel of counsel), for appellants.
Norris McLaughlin, P.A., New York, NY (Mark L. Weyman and Kimbrilee M. Weber of counsel), for respondent D.G. Yuengling & Son, Inc.
Davidoff Hutcher & Citron LLP, New York, NY (Peter M. Ripin, Larry Hutcher, and Benjamin S. Noren of counsel), for respondent Manhattan Beer Distributors.

HOM, J.

OPINION & ORDER
On this appeal, we determine that Alcoholic Beverage Control Act § 55-c(4), which prohibits the termination of agreements between brewers and beer wholesalers without good cause and an opportunity to cure, applies to non-written agreements. Nevertheless, we conclude that the amended complaint in this action failed to state a cause of action alleging violations of Alcoholic Beverage Control Law § 55-c because the plaintiffs failed to plead the essential and material terms of their alleged distribution agreements.
I. Factual and Procedural Background
The plaintiffs, Oak Beverages, Inc. (hereinafter Oak), and Boening Bros., Inc. (hereinafter Boening), are multibrand wholesalers of alcoholic and nonalcoholic beverage products within certain counties in New York. In 2001, Oak and Boening entered into separate oral distribution agreements (hereinafter the distribution agreements) with the defendant D.G. Yuengling & Son, Inc. (hereinafter Yuengling), a brewer of beer products distributed and sold within New York State. Pursuant to the distribution agreements, Oak and Boening each received distribution rights for Yuengling products in exclusive territories within New York.
Thereafter, Yuengling allegedly attempted to coerce the plaintiffs into selling their distribution rights to a competing beer wholesaler, the defendant Manhattan Beer Distributors (hereinafter Manhattan Beer). In 2011, the plaintiffs commenced an action against Yuengling in the United States District Court for the Eastern District of New York, alleging that Yuengling violated [*2]Alcoholic Beverage Control Law § 55-c. That federal action ultimately resulted in a written stipulation of settlement between Yuengling and the plaintiffs in which Yuengling agreed to continue selling Yuengling products to the plaintiffs.
In a letter dated February 23, 2021 (hereinafter the February 2021 letter), Yuengling provided the plaintiffs with written notice of their alleged failure to comply with material terms of the distribution agreements by, among other things, underperforming compared to Yuengling's other wholesalers and failing to effectively market and sell Yuengling products. The February 2021 letter alleged that Yuengling was not required to comply with Alcoholic Beverage Control Law § 55-c, since the parties had not entered into a written agreement. In a letter dated April 8, 2021 (hereinafter the April 2021 letter), Yuengling purported to provide the plaintiffs with 60-days notice of Yuengling's termination of their respective distribution agreements. The April 2021 letter stated that, to the extent an agreement existed between the parties under Alcoholic Beverage Control Law § 55-c, Yuengling had "good cause" to terminate the plaintiffs' respective distribution agreements for the reasons stated in the February 2021 letter.
In May 2021, the plaintiffs commenced this action against the defendants alleging, inter alia, that Yuengling improperly terminated the plaintiffs' respective distribution agreements and conspired with Manhattan Beer to force the plaintiffs to transfer their Yuengling distribution rights to Manhattan Beer at a reduced value. The amended complaint asserted against Yuengling causes of action alleging violations of Alcoholic Beverage Control Law § 55-c, breach of contract, misappropriation of propriety information and trade secrets, and breach of the covenant of good faith and fair dealing. The amended complaint asserted against Manhattan Beer a cause of action alleging intentional interference with contract and, against both defendants, a cause of action alleging a violation of the Donnelly Antitrust Act (General Business Law § 340 et seq.).
Thereafter, the defendants separately moved, among other things, pursuant to CPLR 3211(a)(7) to dismiss the amended complaint insofar as asserted against each of them. Yuengling also moved for an award of costs, fees, and expenses incurred in making its motion. The plaintiffs opposed the defendants' separate motions and cross-moved for leave to serve a second amended complaint. In an order dated May 9, 2022, the Supreme Court granted the defendants' separate motions and denied the plaintiffs' cross-motion. The court directed dismissal of the plaintiffs' causes of action alleging violations of Alcoholic Beverage Control Law § 55-c upon its determination that the plaintiffs failed to show the existence of a written agreement setting forth the essential and material terms, requirements, standards of performance, and conditions of the business relationship between the parties. The plaintiffs appeal.
II. Alcoholic Beverage Control Law § 55-c
The first issue we must address is whether Alcoholic Beverage Control Law § 55-c(4) applies to non-written agreements. We note that this presents a question of first impression for this Court.
"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583). "[T]he legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear" (People v Badji, 36 NY3d 393, 399 [internal quotation marks omitted]). "In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the legislature" (Lubonty v U.S. Bank N.A., 34 NY3d 250, 255). "An examination of the legislative history is proper 'where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment'" (Saul v Cahan, 153 AD3d 951, 952, quoting Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y., 86 NY2d 198, 204). "[A] statute must be construed as a whole and . . . its various sections must be considered with reference to one another" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120). In addition, remedial statutes "should be construed broadly so as to effectuate their purpose" (Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 676; see People v Brown, 25 NY3d 247, 251).
When interpreting Alcoholic Beverage Control Law § 55-c, which governs commercial relationships between brewers, such as Yuengling, and beer wholesalers, such as the plaintiffs (see JRC Beverage, Inc. v K.P. Global, Inc., 223 AD3d 53, 57), we first turn to the text of the statute as the best evidence of the Legislature's intent. First, subdivision (1) begins with a statement of purpose: "It is hereby declared to be the policy of this state, that the sale and delivery [*3]of beer by brewers to beer wholesalers shall be pursuant to a written agreement" (Alcoholic Beverage Control Law § 55-c[1]). Subdivision (3) states that "beer offered for sale in this state by a brewer to a beer wholesaler shall be sold and delivered pursuant to a written agreement . . . which sets forth all essential and material terms, requirements, standards of performance and conditions of the business relationship between a brewer and a beer wholesaler" (id. § 55-c[3]). Subdivision (2)(a) sets forth the definition of an "agreement" as "any contract, agreement, arrangement, course of dealing or commercial relationship between a brewer and a beer wholesaler pursuant to which a beer wholesaler is granted the right to purchase, offer for sale, resell, warehouse or physically deliver beer sold by a brewer" (id. § 55-c[2][a]). Subdivision (4)(a) states that "[n]o brewer may cancel, fail to renew, or terminate an agreement unless the party intending such action has good cause for such cancellation, failure to renew, or termination" (id. § 55-c[4][a]). Subdivision (2)(e) limits good cause to a narrow set of circumstances, including a beer wholesaler's failure to comply with a material term of an agreement (see id. § 55-c[2][e][ii]). Finally, as relevant to this appeal, subdivision (6) states that a beer wholesaler may maintain a civil action to recover damages if a brewer fails to comply with the provisions of the statute (see id. § 55-c[6]).
Next, we examine the legislative history of Alcoholic Beverage Control Law § 55-c. We note that the legislative history of this statute is examined in detail in JRC Beverage, Inc. v K.P. Global, Inc. (223 AD3d at 58-61). The following legislative history is particularly relevant in deciding this appeal. In 1996, the Legislature enacted Alcoholic Beverage Control Law § 55-c (see L 1996, ch 679, § 1). In his approval memorandum, Governor George E. Pataki stated that the bill "protects and provides to beer wholesalers what many other franchise owners in our State already enjoy: written agreements and a concomitant recognition of both the value-added function performed by beer wholesalers and of the legitimate and significant interest that beer wholesalers acquire in the brands of brewers" (Governor's Approval Mem, Bill Jacket, L 1996, ch 679 at 13). Governor Pataki noted that "[t]he absence of a written agreement that recognizes the legitimacy and significance of a beer wholesaler's interest in a brewer's brand has adversely affected the viability and the economic health of beer wholesalers" and stated that "[t]he written agreement provisions of the bill will enhance the ability of beer wholesalers to secure financing from traditional financial markets" (id.). Sponsors of the legislation explained that its purpose was "to provide a more equitable framework for the business dealings between beer brewers and importers and their wholesalers" (Senate Introducer's Mem in Support, Bill Jacket, L 1996, ch 679 at 17-18). The memorandum expressed a specific concern about importer practices, noting that "[w]hile most major suppliers currently market their products pursuant to equity agreements, many importers in particular require their designated wholesaler to operate under oral agreements that are effectively terminable by [the importers] at will" (id. at 18). Similarly, those who lobbied in favor of the legislation described the concerns of small, family-owned beer wholesalers whose agreements were being arbitrarily terminated by large, national beer manufacturers (see Bill Jacket, L 1996, ch 679 at 60-61, 122-132).
III. Legal Analysis
Against this legislative backdrop, we must determine whether Alcoholic Beverage Control Law § 55-c(4) applies to both written and non-written agreements. The plaintiffs contend that the Supreme Court erred in determining that Alcoholic Beverage Control Law § 55-c applies only to written distribution agreements, since such an interpretation would contravene the legislative history of the statute by punishing the very wholesalers the statute was designed to protect. The plaintiffs also contend that the court's interpretation contradicts the plain language of the statute which defines an "agreement" as "any contract, agreement, arrangement, course of dealing or commercial relationship between a brewer and a beer wholesaler" (id. § 55-c[2][a] [emphasis added]). The defendants contend that Alcoholic Beverage Control Law § 55-c does not apply to the parties' oral distribution agreements, since the plain language of subdivisions (1) and (3) of the statute requires agreements to be in writing (see id. § 55-c[1], [3]).
While the plain language of Alcoholic Beverage Control Law § 55-c is seemingly contradictory as to whether an agreement must be in writing, based upon the statute's legislative history, we conclude that the plaintiffs' contention is correct. Although Alcoholic Beverage Control Law § 55-c requires brewers and beer wholesalers to enter into a "written agreement" (id. § 55-c[1], [3]), the statute also defines "agreement" as "any contract, agreement, arrangement, course of dealing or commercial relationship between a brewer and a beer wholesaler" (id. § 55-c[2][a]), and subdivision (4) states that "[no] brewer may cancel, fail to renew, or terminate an agreement unless the party intending such action has good cause" (id. § 55-c[4][a] [emphasis added]). We must consider these sections of the statute with reference to one another (see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 120). Based on the [*4]relatively broad definition of "agreement" contained in Alcoholic Beverage Control Law § 55-c, this Court holds that the legislature did not intend to limit the protections of Alcoholic Beverage Control Law § 55-c(4) to written agreements but, instead intended to extend these protections to non-written agreements, including arrangements, courses of dealing, and commercial relationships between brewers and beer wholesalers (see id. § 55-c[2][a]).
Although existing state case law does not squarely address whether non-written agreements are covered by Alcoholic Beverage Control Law § 55-c(4), this question has been answered in the affirmative in an action commenced in the United States District Court for the Eastern District of New York (see Amtec Intl. of NY Corp. v Beverage Alliance LLC, 2011 WL 13244183, *3 [ED NY, 10CV1147(NGG)(SMG)] [determining that the definition of an "agreement" in Alcoholic Beverage Control Law § 55-c "clearly covers non-written agreements"]). Moreover, we agree with the state and federal courts that have characterized Alcoholic Beverage Control Law § 55-c as remedial in nature (see Garal Wholesalers v Miller Brewing Co., 193 Misc 2d 630, 637-639 [Sup Ct, Suffolk County]; John G. Ryan, Inc. v Molson USA, LLC, 2005 WL 2977767, *3-4, 2005 US Dist LEXIS 42973, *8-14 [ED NY, No. 05CV3984(NGG)(JMA)]; see also Amtec Intl. of NY Corp. v Beverage Alliance LLC, 2011 WL 13244183, *2). Given the statute's remedial nature, it should be construed to effectuate the legislative purpose of protecting beer wholesalers from the cancellation or nonrenewal of their wholesale distribution agreements without cause (see Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d at 676).
Based on the legislative history of Alcoholic Beverage Control Law § 55-c, the statute's "written agreement" requirement was included to protect beer wholesalers from being forced into oral agreements that were effectively terminable at will (see Senate Introducer's Mem in Support, Bill Jacket, L 1996, ch 679 at 17). In this regard, Alcoholic Beverage Control Law § 55-c is meant to shield beer wholesalers from unfair business dealings. However, Yuengling seeks to use the statute as a sword against beer wholesalers, such as the plaintiffs, by limiting the statute's protections only to situations where beer wholesalers have written agreements. Such an interpretation contravenes the legislative purpose of the statute. Accordingly, based upon the plain language of Alcoholic Beverage Control Law § 55-c and its legislative history, we conclude that beer wholesalers who enter into a non-written agreement with a brewer are nevertheless entitled to the protections of Alcoholic Beverage Control Law § 55-c(4), provided that the other requirements of the statute have been satisfied.
Having determined that non-written agreements are covered under Alcoholic Beverage Control Law § 55-c(4), we must now determine whether the Supreme Court properly granted that branch of Yuengling's motion which was pursuant to CPLR 3211(a)(7) to dismiss the plaintiffs' causes of action alleging violations of Alcoholic Beverage Control Law § 55-c. On a motion to dismiss for failure to state a cause of action under CPLR 3211(a)(7), a court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88; see Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141). "'[A]llegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration'" (Simkin v Blank, 19 NY3d 46, 52, quoting Maas v Cornell Univ., 94 NY2d 87, 91). "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d at 142).
Although the absence of a written agreement, standing alone, was insufficient to warrant dismissal of the plaintiffs' causes of action alleging violations of Alcoholic Beverage Control Law § 55-c, that does not end our inquiry. Alcoholic Beverage Control § 55-c requires that an agreement set forth "all essential and material terms, requirements, standards of performance and conditions of the business relationship between a brewer and a beer wholesaler" (id. § 55-c[3]). Here, the amended complaint failed to sufficiently state a cause of action alleging violations of Alcoholic Beverage Control Law § 55-c because the plaintiffs failed to factually plead the essential and material terms of their alleged distribution agreements with Yuengling that would be necessary to assess the pivotal issue of whether there was good cause for Yuengling's termination of the distribution agreements.
Accordingly, the Supreme Court properly granted that branch of Yuengling's motion which was pursuant to CPLR 3211(a)(7) to dismiss the causes of action alleging violations of Alcoholic Beverage Control Law § 55-c.
IV. Remaining Causes of Action
The Supreme Court properly granted that branch of Yuengling's motion which was pursuant to CPLR 3211(a)(7) to dismiss the causes of action alleging breach of contract, as they were duplicative of the causes of action alleging violations of Alcoholic Beverage Control Law § 55-c, since those causes of action arose from the same operative facts and did not allege distinct damages (see Tulino v Hiller, P.C., 202 AD3d 1132, 1136; Pacella v Town of Newburgh Volunteer Ambulance Corps. Inc., 164 AD3d 809, 814).
The Supreme Court properly granted that branch of Yuengling's motion which was pursuant to CPLR 3211(a)(7) to dismiss the cause of action alleging misappropriation of proprietary information and trade secrets, as the allegations contained in the amended complaint were insufficient to render the plaintiffs' client information a trade secret (see Tri-Star Light. Corp. v Goldstein, 151 AD3d 1102, 1106).
The Supreme Court properly granted that branch of Yuengling's motion which was pursuant to CPLR 3211(a)(7) to dismiss the cause of action alleging breach of the implied covenant of good faith and fair dealing, as the amended complaint did not contain any allegations that Yuengling sought to prevent the performance of a contract or to withhold the benefits of a contract from the plaintiffs (see Saltiel v FM Home Loans, LLC, 206 AD3d 778, 780; Michaan v Gazebo Hort., Inc., 117 AD3d 692, 693).
The Supreme Court properly granted that branch of Manhattan Beer's motion which was pursuant to CPLR 3211(a)(7) to dismiss the cause of action alleging intentional interference with contract, as the amended complaint failed to sufficiently allege specific conduct by Manhattan Beer intended to induce a breach of the plaintiffs' distribution agreements with Yuengling or that the agreements would not have been breached but for Manhattan Beer's conduct (see Plymouth Capital, LLC v Montage Fin. Group, Inc., 230 AD3d 1361, 1363; Kimso Apts., LLC v Rivera, 180 AD3d 1033, 1035).
The Supreme Court properly granted those branches of the defendants' separate motions which were pursuant to CPLR 3211(a)(7) to dismiss the cause of action alleging a violation of the Donnelly Antitrust Act (General Business Law § 340 et seq.) insofar as asserted against each of them. The amended complaint failed to allege the nature and effect of the claimed conspiracy and the manner in which the economic impact of that conspiracy restrains trade in the market (see Shaw v Club Mgrs. Assn. of Am., Inc., 84 AD3d 928, 929).
Accordingly, the Supreme Court properly directed dismissal of the amended complaint.
V. Parties' Remaining Arguments
The Supreme Court providently exercised its discretion in denying the plaintiffs' cross-motion for leave to serve a second amended complaint. "In the absence of prejudice or surprise to the opposing party, leave to amend a pleading should be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Bleakley Platt & Schmidt, LLP v Barbera, 136 AD3d 725, 726 [internal quotation marks omitted]). "The determination to permit or deny amendment is committed to the sound discretion of the trial court" (US Bank N.A. v Murillo, 171 AD3d 984, 986). Here, the proposed second amended complaint was palpably insufficient and patently devoid of merit, as it failed to cure any of the defects that warranted dismissal of the amended complaint (see Singh v T-Mobile, 232 AD3d 662, 667).
However, the Supreme Court erred in granting that branch of Yuengling's motion which was for an award of fees incurred in making its motion. "The American Rule, which is followed in New York, is that [a]n attorney's fee is merely an incident of litigation and is not recoverable absent a specific contractual provision or statutory authority" (214 Wall St. Assoc., LLC v Medical Arts-Huntington Realty, 99 AD3d 988, 990 [internal quotation marks omitted]; see Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5). Here, Yuengling failed to identify any contractual provision that would support its claim to an award of fees incurred in making its motion. Although the court may, in its discretion, pursuant to 22 NYCRR 130-1.1 award costs in the form of reimbursement for actual expenses incurred and reasonable attorney's fees resulting from frivolous conduct, here, the plaintiffs' conduct was not frivolous.
The plaintiffs' remaining contentions either are without merit or need not be reached in light of the foregoing.
Accordingly, the order is modified, on the law, by deleting the provision thereof granting that branch of Yuengling's motion which was for an award of fees incurred in making its motion, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed.
MILLER, J.P., CHRISTOPHER and LANDICINO, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendant D.G. Yuengling & Son, Inc., which was for an award of fees incurred in making its motion, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, with one bill of costs to the respondents.
ENTER:
Darrell M. Joseph
Clerk of the Court